**Francis J. SANTORA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 92–85C.

United States Claims Court.

Nov. 22, 1985.

See also, 10 Cl.Ct. 38.

---

Michael J. Kator, Washington, D.C., for plaintiff; Kator, Scott & Heller, Washington, D.C., of counsel.

Lynn J. Bush, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, for defendant; David M. Cohen, Director, Robert A. Reutershan, Asst. Director, and Timothy M. White, Office of Gen. Counsel, Dept. of Health and Human Services, Washington, D.C., of counsel.

## OPINION

### ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

This is a suit brought by a former federal employee of the Public Health Service (PHS) seeking severance pay pursuant to 5 U.S.C. § 5595, for involuntary separation from his employment, for other than misconduct, delinquency or inefficiency. Plaintiff claims his separation from federal service, after 20 years of satisfactory performance, was involuntary, as he resigned in lieu of separation for declining to accept reassignment from New York City to Columbus, Ohio. Defendant counters that as PHS never actually proposed that plaintiff be separated, his resignation was voluntary. Both parties have moved for summary judgment, contending there is no material issue of fact in dispute.

## I.

Plaintiff, Francis J. Santora, is a former employee of the United States Department of Health and Human Services (HHS), Public Health Service, Centers for Disease Control, Center for Prevention Services (CPS). He was employed as a Public Health Advisor, and from January 1964 until his separation from federal service in May 1984 he was assigned to work with the New York City Department of Health.

Although plaintiff's ability to perform at a fully satisfactory level and the absence of any performance deficiency were acknowledged, on June 24, 1983, plaintiff was informed that because he had been in a specialized assignment for such a long time he was being given considerable advance notice to expect a transfer to some unspecified other location. The stated purpose of the proposed transfer was to provide him with additional on-the-job training so as to increase his effectiveness as a public health advisor and to help his development as a program manager. The subject was discussed with him again on February 6, 1984.

On March 6, 1984, plaintiff received from Terrence J. Preston, Chief, Field Services, Center for Prevention Services, a notice of proposed reassignment from New York to Columbus, Ohio, effective April 15, 1984. The notice requested plaintiff's decision as soon as possible on whether or not he wished to accept the proposed reassignment. If his answer was in the negative, he was to furnish a statement of his reasons therefor, and a decision on the proposed reassignment would be communicated to him within a reasonable time thereafter.

On April 6, 1984, plaintiff requested additional time to consider his proposed relocation, but his request was rejected by Mr. Preston in a letter dated April 13, 1984, on

the ground that "You have had ample time to do this, and I do not believe further delay is warranted. Therefore, it is my decision to proceed with your reassignment effective May 13, 1984."

The letter stated the reason for the reassignment decision to be:

As you know availability for reassignment is a condition of employment for Center for Prevention Services (CPS) personnel assigned to State and local health departments. If you are to remain a member of the CPS field staff, you must be available for reassignment. Your assignment in Columbus will meet a program need for additional management staff, and it will also provide you with an opportunity to broaden your experience as a public health advisor. We expect this assignment will enable you to develop as a program manager by on-the-job experience and training * * *.

The letter further stated:

You should report on Monday, May 14, 1984, to Mr. Hill, Ohio STD Program, Ohio Department of Health, 266 North Fourth Street, Columbus, Ohio 43215. Failure to comply with this directive could result in a charge of failure to follow supervisory instructions, place you in an absent-without-leave status, and could constitute grounds for involuntary separation.

The letter concluded with the notice that the decision was grievable under HHS' grievance procedure, but that the initiation of a grievance would not stay the reassignment decision or excuse him from reporting for duty as directed. If he desired to present a formal grievance, plaintiff was allowed 14 calendar days to submit it to J. Michael Lane, M.D., Centers for Disease Control, Center for Prevention Services, Atlanta, Georgia.

On April 23, 1984, plaintiff submitted to Dr. Lane his grievance from Preston's decision of April 13, 1984. Plaintiff contended that availability for reassignment at a different geographical location was never explicitly or implicitly a condition of his employment and that consideration should be given to his 20 years at a single geographical location, his age and his satisfactory service in his existing position. He sought: (a) cancellation of the decision to reassign him to Columbus, Ohio, effective May 13, 1984; (b) should he fail to accept reassignment or resign in lieu of involuntary separation, receipt of severance pay; and (c) postponement of his reassignment pending a decision on his eligibility for severance pay. He requested the opportunity for a personal presentation, through counsel, in New York City.

As Monday, May 14, the effective date of plaintiff's ordered reassignment, drew near and plaintiff did not receive a ruling from Dr. Lane on plaintiff's grievance appeal nor the opportunity for a personal presentation, on Friday, May 11, 1984, in lieu of accepting geographic reassignment, plaintiff submitted his letter of resignation effective as of the termination of his duties in New York. The letter explained his action as follows:

It is with sincere regret that I must involuntarily resign from a position I have held, enjoyed and I believe contributed to for these past twenty years. Unfortunately, I have been placed in a situation where I have been told that I either relocate or be terminated. Since I do not wish to mar my record by an adverse action, I am forced to resign.

My resignation is involuntary in lieu of transfer and I am submitting it in accordance with 5 CFR 550.706.

With all respect to my agency, I cannot, at 47 years of age and in the waning years of my career, forsake the needs and desires of my family by uprooting them from an area in which we were born and raised and move to Columbus, Ohio.

Since my resignation is involuntary, I now make a formal demand for severance pay to which I am entitled under the criteria set forth in 5 CFR 550.705. I request your response to this demand in order that I may protect any rights or benefits to which I may be entitled.

I have enjoyed working for the Centers for Disease Control, and the City of New York, Department of Health and with you. I am sorry that my departure has to be under these conditions.

My resignation will be effective May 11, 1984 cob.

When on June 13, 1984, Dr. Lane finally responded to plaintiff's grievance letter of April 23, 1984, he ruled that "You resigned from your Federal position on May 11, 1984, and that action results in termination of your grievance." At the same time he justified the CPS actions on the grounds that—

(1) It is common knowledge and plaintiff must have been aware that personnel of the CPS assigned to state and local health departments and members of the field staff must be available for reassignment as a condition of employment.

(2) CPS does not make exceptions to the transfer policy, and plaintiff's Columbus reassignment was an appropriate and proper placement decision.

(3) The granting of severance pay to an employee subject to relocation, who declines to report to duty after being notified of reassignment to a different geographic area, is not appropriate for CPS personnel assigned to state and local health departments. Office of Personnel Management Regulations, Title 5 C.F.R. § 550.705, which provide that, for purpose of severance pay, separation for declining to accept reassignment to another commuting area is a separation for other than misconduct, delinquency or inefficiency, specifically except the case where the employee's "position description or other written agreement or understanding provides for these assignments."

## II.

Congress has authorized the entitlement to severance pay for "an employee who * * is involuntarily separated from the service, not by removal for cause on charges of misconduct or inefficiency * * *." 5 U.S.C. § 5595(b) (1982).

In *Akins v. United States,* 194 Ct.Cl. 477, 484–85, 439 F.2d 175, 178 (1971), the Court of Claims observed that the legislative history of this statute indicates that its purpose is to—

afford monetary relief to Federal employees who, after long years of faithful public service, "find themselves out in the cold without work and without retirement," and with the complete loss of earned employee rights.

The Act does not define "involuntary separation." Neither do the implementing regulations, 5 C.F.R. § 550; but they do provide two pertinent instances in which involuntary separation is deemed to occur:

§ 550.705 Failure to accept assignment.

When an employee is separated because he declines to accept assignment to another commuting area, the separation is an involuntary separation not by removal for cause on charges of misconduct, delinquency, or inefficiency for purpose of entitlement to severance pay, unless his position description or other written agreement or understanding provides for these assignments.

§ 550.706 Resignation in lieu of involuntary separation.

(a) Except as provided for in paragraph (b) of this section, an employee who is separated because of resignation is deemed to have been involuntarily separated for purposes of entitlement to severance pay, if he has not declined an offer of an equivalent position under 550.701(b)(2), when he is separated because of resignation (1) after receiving a specific notice in writing by his agency that he is to be involuntarily separated not by removal for cause on charges of misconduct, delinquency or inefficiency * * * and (3) after receipt of a notice by his agency proposing to separate him for declining to accompany his activity when it is to be moved to another commuting area because of a transfer of function and when all positions in his competitive area are to be abolished or transferred to another commuting area within a period of not more than 1 year.

(b) When the facts and circumstances available to an agency show that a resignation under paragraph (a) of this section is unrelated to the issuance of one of the notices specified in that paragraph, separation of the employee by resignation is a voluntary separation under section 5595 of title 5, United States Code.

■ The provisions governing eligibility for severance pay due to involuntary separation are to be construed liberally and generously, *Sullivan v. United States*, 4 Cl.Ct. 70, 74–75 (1983), *aff'd per curiam*, 742 F.2d 628 (Fed.Cir.1984), *citing Spring v. United States*, 492 F.2d 1053, 1054 (4th Cir.1974), and "voluntariness" is a question of fact. *Sullivan v. United States*, 4 Cl.Ct. at 75; *Patterson v. United States*, 193 Ct.Cl. 750, 756–57, 436 F.2d 438, 440–41 (1971); 5 C.F.R. § 550.706(b).

### A. Defendant's Motion for Summary Judgment

■ Plaintiff argues that § 550.705 applies because he was separated for failure to accept geographic reassignment. Defendant asserts that § 550.705 does not apply because "Mr. Santora was *not separated* because he declined a geographic reassignment * * * [but] solely because he resigned." [Emphasis defendant's.] Defendant further asserts that § 550.706 does not apply in favor of plaintiff because his resignation was not after receipt of a notice proposing to separate him involuntarily for his declining to accept relocation.

But was there a voluntary resignation and was the resignation unrelated to any notice that plaintiff would be separated unless he acquiesced in the relocation?

The record in support of defendant's motion for summary judgment does not conclusively support defendant's affirmative answer to either of these questions, as shown hereinafter:

(1) Plaintiff's letter of resignation specifically stated: "I have been told that I either relocate or be terminated"; "My resignation is involuntary in lieu of transfer"; and "I am forced to resign."

The context in which the letter was written is also incompatible with a voluntary resignation. Plaintiff was informed by his superior's letter of April 6, 1984, that his employment in New York would terminate on Friday, May 11, that he was required to report to Columbus on Monday, May 14, and that his filing of a grievance against that order would not stay the order. While plaintiff had filed a grievance from the order on April 23, he had not heard of any decision on his grievance by the effective date of the order. Since his superior maintained that plaintiff's refusal to relocate would breach his original employment agreement that he would be available for reassignment (which plaintiff disputed), plaintiff was concerned that unless he resigned prior to May 14 he would be removed for cause on a charge of delinquency. His letter of resignation thus indicates that he resigned because he believed that if he did not do so by Friday, May 11, his record would be marred by an adverse action and would impair his efforts to seek other employment.

In the light of these facts, as well as the pendency of the grievance, how CPS could have understood plaintiff's letter as a voluntary resignation unrelated to the agency's relocation order, within the meaning of § 550.706, is difficult to comprehend.

(2) Plaintiff did receive notice that if he refused relocation he would be removed. His superior's letter of April 13 warned that plaintiff's "failure to comply with this directive could result in a charge of failure to follow supervisory instructions, place you in an absent-without-leave status, and could constitute grounds for involuntary separation." Defendant argues that the use of the word "could" rather than "will" vitiates this as a notice that plaintiff would in fact be involuntarily separated for his refusal. But when this statement is coupled with the superior's statements in the same letter that his "availability for reassignment is a condition of employment" and "If you are to remain a member of the CPS field staff, you must be available for reassignment", plaintiff was well warrant-

ed in construing the total letter as a notice that he would be removed if he did not comply. Furthermore, defendant does not deny, by affidavit or otherwise, plaintiff's statement in his letter of resignation that "I have been told that I either relocate or be terminated." Indeed, this is reaffirmed by the letter of June 13, 1984, from the CPS director which stated that "we do not make exceptions to the transfer policy." Defendant offered no affidavit or other admissible proof which would limit or qualify the threat contained in the letter of April 23. If by May 11, 1984, the agency had still not made up its mind to discharge plaintiff if he failed to relocate, it could reasonably have been expected to have told plaintiff he was mistaken rather than have accepted his "involuntary" resignation without comment.

Defendant's motion for summary judgment must therefore be denied.

### B. Plaintiff's Motion for Summary Judgment

 The denial of defendant's motion for summary judgment does not necessarily mean that plaintiff's motion must be allowed. Summary judgment may be granted only if plaintiff is entitled to judgment as a matter of law. RUSCC 56(c).

For plaintiff to qualify for severance pay under 5 C.F.R. § 550.705 or § 550.706 as one who has been involuntarily separated, or resigned in lieu of threatened separation, for failure to accept assignment to another area, plaintiff must establish that his position description or other written agreement or understanding does not provide for such assignments. This is a question of fact.

Plaintiff did not present evidence to support his side of this issue in either his motion or opposition. While the pleadings contain an admission by defendant that no such written agreement or understanding exists, there is no admission that plaintiff's position description lacks a mobility requirement. Thus, an issue of fact remains with respect to this matter.

*Conclusion and Order*

Both plaintiff's and defendant's motions for summary judgment are denied. The parties are to notify the court within 15 days of a jointly agreeable trial date or other proposed dispositive action, failing which the court will fix such date unilaterally.