Francis J. SANTORA, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 92–85C.

United States Claims Court.

May 16, 1986.

Michael J. Kator, Washington, D.C., for plaintiff. Kator, Scott & Heller, of counsel.

Lynn J. Bush, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. David M. Cohen, Director, Robert A. Reutershan, Assistant Director, and Timothy M. White, Office of General Counsel, Dept. of Health and Human Services, of counsel.

## OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

In *Santora v. United States*, 9 Cl.Ct. 182 (1985), the court denied summary judgment for defendant, holding that plaintiff's resignation as an employee of the Center for Prevention Services (CPS) of the Public Health Service (PHS) was involuntary and tendered in response to notice that he would be separated if he did not accept reassignment from New York City to Columbus, Ohio. Thus, his resignation did not preclude his obtaining severance pay for an involuntary separation without fault.

*Id.* at 186–87. At the same time the court denied summary judgment for plaintiff because he failed to support his motion with evidence that his job description lacked a mobility requirement, which is a threshold requirement of eligibility for severance pay under 5 C.F.R. § 550.705 and § 550.706. *Id.* at 187.

Both parties again move for summary judgment. The factual question left open on plaintiff's motion for summary judgment, i.e., whether or not his position description contained a mobility requirement, has been resolved by defendant's concession that no such requirement existed.

In its prior motion for summary judgment defendant had contended that plaintiff's resignation was voluntary because he never received specific notice that he was to be separated if he failed to accept relocation. However, the court held that the April 6 notice of reassignment, read in its entirety, constituted such notice. *Id.* at 186–87. Defendant belatedly makes a new contention that even if so read, that notice was not issued by anyone with authority to propose adverse personnel actions. Its contention is supported by the affidavit of the director of the Personnel Management Office, Centers for Disease Control, PHS, who states that the Chief, Field Services, who issued the April 6 notice, did not have delegated authority to propose or to decide adverse personnel actions.

This affidavit does not help defendant, however. First, the regulation on severance pay does not require that the employee receive a formal notice of proposed separation from an official of sufficient authority to qualify for appeal to the Merit Systems Protection Board. 5 C.F.R. § 550.706.

Second, the government focuses only on the authority of Terrence Preston, Chief, Field Services. It ignores the fact that the notice of removal contained in Mr.

Preston's letter was reiterated by Dr. J. Michael Lane, Director, Center for Prevention Services, Centers for Disease Control, who did have the authority to propose separation.[1] It was to Dr. Lane that plaintiff directed his April 23 grievance; and it was Dr. Lane who failed to act on plaintiff's grievance until after May 14, the date by which plaintiff was required to relocate. Although plaintiff had explained in his grievance that he was not subject to relocation, Dr. Lane responded that availability for relocation was a job requirement, that to continue in employment all CPS personnel must be available for reassignment, and that no exceptions to CPS' transfer policy are made. *Santora,* 9 Cl.Ct. at 185. He thereby confirmed both that the notice given plaintiff by Mr. Preston conformed to CPS policy and that plaintiff's supervisor's position would be supported by CPS management.

Moreover, Dr. Lane accepted plaintiff's resignation, which was conditioned on the information given him by his superior that his failure to acquiesce in the relocation would result in his dismissal. If Dr. Lane accepted the resignation without regard to its premise, and did not notify plaintiff that his resignation could not be accepted under such terms, it would follow that he rejected the resignation yet separated plaintiff nonetheless and without further proceedings, and that plaintiff was never properly separated. Plaintiff's remedy would then be a claim for back pay and reinstatement rather than merely severance pay. However, for the reasons stated in the prior opinion, the court holds that the government did accept plaintiff's resignation as an involuntary resignation because he declined to accept relocation, which the government at that time erroneously deemed to be a condition of his employment.

---

1. A July 1983 letter from Donald R. Hopkins, M.D., Assistant Surgeon General and Acting Director, Centers for Disease Control, delegates authority to propose adverse personnel actions under HHS Personnel Instruction 752–1 to "Directors, Centers/Institute, Program Offices, Staff Offices, and Staff Services" for their "Respective Organizations." Defendant's Motion for Summary Judgment, Exhibit 2.

The treatment of this plaintiff by CPS is precisely the sort that Congress intended to alleviate by granting severance pay. *See Akins v. United States,* 194 Ct.Cl. 477, 484–85, 439 F.2d 175, 178 (1971). After 20 years of satisfactory performance in New York, CPS decided to move him to Ohio, telling him repeatedly that availability for relocation was a job requirement. When plaintiff appealed the move, arguing correctly that he was not subject to a mobility requirement, he received no timely response. When the critical date arrived, plaintiff was faced with a dilemma not of his own making but created by defendant's threat to discharge plaintiff,[2] its tardiness in handling plaintiff's grievance, and by its intransigent and erroneous position that plaintiff was required to relocate without any right to severance pay if he declined.

■ Defendant seeks to avoid the consequences of this conduct on the technicality that no one actually authorized to propose plaintiff's firing notified him that PHS proposed to separate him, and that 5 C.F.R. § 550.706 makes no distinction between voluntary and involuntary resignations. These arguments simply ignore that the statute providing for severance pay upon involuntary separation, and its implementing regulations, are to be construed liberally and generously, *Santora v. United States,* 9 Cl.Ct. at 186 (and citations therein), and that voluntariness is a question of fact. *Id.* (and citations therein). The regulations provide instances in which a separation will be deemed involuntary, *id.* at 185, but they are not exclusive. They cannot recast as a "voluntary" separation for purposes of 5 U.S.C. § 5595 what the evidence shows is otherwise. The distinction between voluntary and involuntary therefore is equally relevant to resignations, especially resignations induced by the kind of "squeeze out" practiced on plaintiff.

Defendant asks this court to deny plaintiff relief because rather than resigning Friday afternoon, he should have waited to see if they would carry out their threats when he reported Monday morning in New York rather than Columbus. But plaintiff was well warranted in believing that his discharge was a certainty if he declined to relocate. Why else would CPS have snapped up his resignation, rather than correct his misperception? .

Pursuant to RUSCC 56(d)(1), plaintiff states that the amount of severance pay due, $44,179.20, is an undisputed material fact, which allegation is supported by a copy of plaintiff's final pay statement. Defendant has not disputed this amount, as required by RUSCC 56(d)(2). There being no dispute as to any material fact, plaintiff is entitled to judgment for $44,179.20 as a matter of law.

Plaintiff's motion for summary judgment is GRANTED. Defendant's motion for summary judgment is DENIED. The Clerk is directed to enter judgment for plaintiff in the amount of $44,179.20.

---

**2.** Defendant has not disputed, by affidavit or otherwise, the statement in plaintiff's resignation that he was told he would be discharged if he failed to relocate. Defendant's only response is that no one with authority to fire plaintiff put that threat in writing.