Robert B. GIKNIS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 162–88 C.

United States Claims Court.

March 20, 1990.

Robert F. O'Neill, Burlington, Vt., attorney of record for plaintiff.

Hillary A. Stern, with whom were Asst. Director Stephen J. McHale, Director David M. Cohen, and Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

WIESE, Judge.

Plaintiff is a former contracting officer who resigned from federal service in lieu of being transferred to a comparable position in a different geographic area. The question in the case is whether his resignation qualifies as an involuntary separation for purposes of severance pay entitlement under 5 U.S.C. § 5595 (1988). The issue is before us on cross-motions for summary judgment; we hold for the defendant.

### I

On February 1, 1985, plaintiff's employer, the Defense Logistics Agency of the Department of Defense, notified him that the position in which he was then serving (Chief of the Contract Management Division assigned to the General Electric plant in Burlington, Vermont[1]) had been made subject to the requirements of an agency regulation, Defense Logistics Agency Regulation (DLAR) No. 1404.13, prescribing a mandatory job rotation requirement for key contract administration personnel assigned to contractor plants. The stated purpose of the regulation—and the reason for its inclusion in plaintiff's position description—was to help "remove any concern which may exist that Government representatives in sensitive and demanding positions may be influenced by events or circumstances resulting from a continuing association with a defense contractor."

Two months later, plaintiff received a memorandum from the Director, Office of Civilian Personnel, Defense Contract Administrative Services Region, Boston, explaining the rotation program. Attached to this memorandum was a copy of the regulation (DLAR No. 1404.13—"Rotation of Contract Administration Services Personnel Assigned to Contractor Plants"), the text of which included this caution: "Employees refusing to accept a reassignment under this program without justifiable reason may be separated from the service under provisions of the Office of Personnel Management Regulation, Part 752."

Following receipt of these explanatory materials, plaintiff attended an in-house meeting for civilian personnel affected by the rotation requirement and, at this time, he was advised that personnel unwilling to relocate *would* be separated and that there would be no exceptions to this rule.

Thereafter, sometime between March 1985 and January 1986 (the exact date is unknown because the pertinent document has been misplaced), plaintiff was notified that he was scheduled for a change in duty station in 1986. However, in January of that year (1986), the Office of Civilian Personnel informed him by letter that the planned rotation would be postponed (for the Government's convenience) until the summer of 1987. At this time, plaintiff was also told that his future assignment would be that of Contracts Chief for the Defense Contract Administration Services Plant Representative Office at the Sanders facility in Nashua, New Hampshire. The letter concluded by saying: "You will be notified of your actual reporting date during the 3rd Quarter, FY 87." In the months that followed the notice of expected reassignment, plaintiff was repeatedly told by his supervisors (in the context of everyday discussions with them) that he would not receive any further waivers of his rotation obligation.

Faced with the seeming certainty of reassignment and knowing that he would be unwilling to relocate, plaintiff began to look for other employment in the Burlington area. But, because of his specialized

---

**1.** Plaintiff's complete title was: Chief, Contract Management Division of the Contract Administration Services Plant Representative Office, Defense Logistics Agency.

work experience and skills, his job search had to be limited to the few companies in the area with substantial involvement in defense contract work. In June 1986, the position of Contracts Manager for Special Programs became available at Simmons Precision Products, Inc. in Vergennes, Vermont. Plaintiff applied for this position and an offer was extended to him.

The following month, plaintiff notified his agency that he intended to resign. In a Request For Personnel Action, dated July 14, 1986, plaintiff explained his reasons for this action:

> I do not wish to relocate in accordance with the rotation program.
>
> Rotation to the greater Boston area is economically unfeasible due to the high cost of real estate. In addition, relocation would require readmission to the Bar Association and would preclude my finishing the MBA program which I am currently in.

Accordingly, on July 16, 1986, some twelve months before his scheduled rotation, plaintiff submitted his resignation.

Before resigning, plaintiff requested severance pay under the provisions of 5 U.S.C. § 5595 and 5 C.F.R. § 550 subpart G. The Agency denied his request on the ground that section 550 of the regulations limited the award of severance pay following resignation to cases where the resignation "follow[ed] a specific notice in writing that you would be involuntarily separated." In plaintiff's case such notice had not been given.

Plaintiff filed suit here on March 11, 1988.

## II

■ We begin by noting that this case does not turn on whether plaintiff can be held to the mobility requirement that was added to his position description. Federal personnel regulations recognize that where such a requirement is added after an employee has accepted his position (as was true here) the Government will be liable for severance pay should it dismiss the employee for refusing to accept a reassignment.[2] Plaintiff's case, however, involves not a dismissal but a resignation. Accordingly, the only question we face here is whether, on the facts recited, plaintiff's resignation can be considered involuntary, thereby establishing his right to severance pay.

The Government argues against such a conclusion; it reiterates the same point which was asserted by the employing agency: to qualify for severance pay, federal personnel regulations require that the employee's resignation occur *after* his receipt of a specific notice in writing from the employing agency advising that he is to be involuntarily separated. Since, according to the Government, plaintiff never received specific written notice of his separation, his resignation must be considered voluntary.

Plaintiff disputes both parts of the Government's argument. As to the regulation, he contends that resignations prompted by an employee's refusal to relocate stand on their own; their validity (for purposes of insuring a right to severance pay) is not tied to a preceding notice of separation from the employing agency. However, should notice be deemed necessary, then plaintiff contends—and this is his second argument—that the facts so clearly demonstrate the Government's intention to

**2.** In such circumstances, the employee's separation is deemed involuntary. *See* Federal Personnel Manual (FPM) Supp. 831–1, subch. S11, S11–2(e) (Sept. 21, 1981), which reads, in pertinent part, as follows:

> If, after an employee accepts a position, a mobility agreement is added to his or her position description, he or she will be considered involuntarily separated if he or she subsequently declines reassignment to a position outside of his or her commuting area. However, if the employee once accepts reassignment outside of the commuting area, he

or she is considered to have accepted the mobility agreement as part of his or her position description and if he or she should subsequently decline geographic reassignment, his or her separation will be considered a voluntary separation and will not be qualifying for discontinued service retirement purposes.

Although this regulation specifically addresses retirement-eligible employees, we regard the rule it prescribes for the treatment of later-added mobility requirements to be sound law for all comparable situations.

involuntarily separate him as to render redundant any further requirement for formal notice. We consider these arguments in turn.

■ The regulation on which plaintiff relies is 5 CFR § 550.705 (1989). This regulation, one of several on the subject of severance pay entitlement, reads in pertinent part as follows:

Failure to accept assignment.

When an employee is separated because he declines to accept assignment to another commuting area, the separation is an involuntary separation not by removal for cause on charges of misconduct, delinquency, or inefficiency for purpose of entitlement to severance pay, unless his position description [at the outset of employment] or other written agreement or understanding provides for these assignments.

Plaintiff reads the word "separated" in the regulation's introductory language ("When an employee is separated because he declines to accept assignment to another commuting area") as encompassing both an agency-directed removal from office, *i.e.*, a discharge, and an employee-initiated relinquishment of position, *i.e.*, a resignation. And in neither case—the argument continues—is the right to severance pay conditioned upon the separation action being preceded by written notice from the employing agency. Thus, under plaintiff's view of the regulation, entitlement to severance pay demands nothing beyond proof that the employee's resignation was prompted by the forced choice between keeping his job or keeping his location.

We cannot endorse this reading of the regulation. All that section 550.705 speaks to is the situation where an employee has refused reassignment and is fired, *i.e.*, involuntarily separated, because of that refusal. "Separated" in this context cannot also include separation based on resignation; this is made clear by the fact that that subject is dealt with in the very next regulation, 5 CFR § 550.706 (1989). This regulation, captioned "Resignation in lieu of involuntary separation" reads, in pertinent part, as follows:

(a) [A]n employee who is separated because of resignation is deemed to have been involuntarily separated for purposes of entitlement to severance pay, if he has not declined an offer of an equivalent position under § 550.701(b)(2), when he is separated because of resignation ... after receiving a specific notice in writing by his agency that he is to be involuntarily separated not by removal for cause on charges of misconduct, delinquency, or inefficiency....

Putting the two regulations side-by-side makes it immediately apparent that section 550.705 deals with employer-initiated separations while section 550.706 covers employee-initiated separations. Failure to make this distinction would lead to a conflict in regulations: two different provisions—and, accordingly, two different standards—would govern severance pay entitlement for employees who resign in lieu of accepting transfer to another commuting area. We reject such an interpretation as an unnecessary and unnatural reading of the severance pay regulations as a whole. *Cf. United States v. Morton*, 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984) (A court should not "construe statutory phrases in isolation," but should "read statutes as a whole.") We find, therefore, that claims for severance pay following resignation fall under section 550.706.

■ This brings us to plaintiff's second argument. As noted, section 550.706 requires that, for severance pay purposes, the employee's resignation must have been preceded by a "specific notice in writing by his agency that he is to be involuntarily separated." No such notice was given here. Nevertheless, plaintiff contends that, as a matter of law, formal notice (as contemplated by the regulation) is not necessary. What is necessary, argues plaintiff, is a factual portrait sufficient to demonstrate the certainty of the Government's intention to transfer the employee to another geographic area and to involuntarily separate him upon his refusal to accept a reassignment. Plaintiff derives his argument from the decision in *Santora v. United States*, 9 Cl.Ct. 182 (1985).

In that case, the Claims Court did indeed reject the argument that written notice of involuntary separation had to precede the employee's resignation in order to establish a claim for severance pay. There, as here, the employee had been instructed that reassignment was a condition of employment and that refusal to accept reassignment could lead to involuntary dismissal. Also, as here, the plaintiff in *Santora* saw his resignation as a forced choice between relocation or termination.

Where the cases part company, however, is that in *Santora* the employee's resignation took place on the eve of his scheduled transfer date, May 11, 1984—literally three days before he was to report to his new duty station. The court saw this fact as critical. It said: "If by May 11, 1984, the agency had still not made up its mind to discharge plaintiff if he failed to relocate, it could reasonably have been expected to have told plaintiff he was mistaken rather than have accepted his 'involuntary' resignation without comment." *Id.* at 187. In other words, the failure to deter plaintiff from resigning, at a time when the agency might reasonably have been expected to have resolved whether to retain or to discharge Mr. Santora, was a clear signal that plaintiff's departure mirrored the agency's intention. If separation was not what the agency contemplated, it had an obligation to speak.

We cannot apply the same reasoning to this case. Plaintiff relinquished his position a year before his expected transfer date. At the time of plaintiff's resignation, his scheduled rotation was too remote in time to be considered definite. Much could happen in the meantime. For instance, the Agency might experience difficulty in locating other employees suitable for rotation into plaintiff's job description and this in turn could delay plaintiff's own rotation or even prompt the Agency to change course entirely. Plaintiff himself acknowledged the tentativeness of the Agency's intended action when he stated, in a July 2, 1986, letter to the Agency, that he planned to resign in lieu of "continu[ing] to be employed under the *threat* of rotation." (Emphasis added.)

This is not to say, of course, that from plaintiff's standpoint his decision to resign was premature. To the contrary, given his limited experience and his limited reemployment opportunities, he would have been ill advised to turn down the offer he received. But these economic constraints notwithstanding, the fact remains that plaintiff acted before the Government could reasonably have determined its own personnel needs with finality. To recognize a right to severance pay under such circumstances would, in effect, permit the employee to precipitate his own involuntary separation rather than have that occur as the consequence of a Government management decision. Plaintiff is not entitled to severance pay.

### III

For the reasons stated herein, plaintiff's motion for summary judgment is denied and defendant's cross-motion is granted. The Clerk is directed to enter judgment accordingly. Each party shall bear its own costs.