**Howell BELL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Carmen G. BENABE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Fannie SALLIE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Nos. 687–88C, 688–88C and 689–88C.**

United States Claims Court.

May 8, 1991.

---

Dan M. Norwood, with whom was Frank Deslauriers, Memphis, Tenn., for plaintiffs.

Hillary A. Stern, with whom were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen and Stephen J. McHale, Washington, D.C., for defendant.

## OPINION AND ORDER

TURNER, Judge.

In these civilian pay cases, three former federal employees claim entitlement to severance pay under 5 U.S.C. § 5595 following their resignation from employment with the Federal Aviation Administration at Memphis, Tennessee. The allegations of fact and law in each case are identical.

This opinion addresses cross-motions for summary judgment.[1] Two issues are presented by the parties. The government asserts that this court lacks jurisdiction to decide cases involving employee resignations which are alleged to be involuntary separations from federal service; defendant posits that such claims must first be brought before the Merit Systems Protection Board. On the merits, plaintiffs assert that under controlling legislation and case law, their resignations qualify as involuntary separations for purposes of entitlement to severance pay.

We conclude that the Claims Court has jurisdiction over plaintiffs' claims and that each plaintiff is entitled to receive severance pay under 5 U.S.C. § 5595. Accordingly, plaintiffs' motions for summary judgment filed on October 31, 1989 should be granted and defendant's cross-motions for summary judgment filed on January 16, 1990 should be denied.

### I

Plaintiffs Bell, Benabe and Sallie are former FAA employees. At the time of their termination, Bell had 18 years, 8 months of service with the government, Benabe had 14 years, 6 months of service and Sallie had 13 years, 3 months of service.

On April 4, 1986, a memorandum was issued by the FAA Administrator to the en route automation and training staff at Memphis which included the three plaintiffs. In the memorandum, FAA announced its decision to eliminate the en route automation and training staff and to contract for its function with private contractors. This decision was made in order to comply with Congressional mandates requiring a reduction in total air traffic employment while at the same time providing for an increase in the controller work force.

On June 23, 1986, the plaintiffs received *general* reduction-in-force (RIF) notices informing them that their positions with the en route automation and training staff would be abolished no later than September 30, 1986. The general RIF notices stated that the plaintiffs would be separated from their positions and either reassigned, demoted, or separated from service. According to usual RIF procedures, the plaintiffs would then receive *specific* notices informing them of the personnel action taken in their individual cases. *See* 5 C.F.R. §§ 351.801–351.807.

After the general RIF notices but prior to receipt of specific RIF notices, the plaintiffs were advised by the agency to resign. Robert F. Langen, Jr., Assistant Manager of Automation, told the plaintiffs that their resignation in lieu of RIF separation would spare the FAA time and effort during the RIF process. He also advised them that resignation would assure that they would be available to assume a position with the new contractor and that it would not affect their receipt of severance pay.

Relying on this advice, plaintiffs Bell, Benabe and Sallie submitted letters of resignation effective September 13, 1986. FAA denied plaintiffs' subsequent requests for severance pay. Their appeal of FAA's denial was likewise denied by the Comptroller General of the United States. Thereafter plaintiffs filed these actions claiming entitlement to severance pay under 5 U.S.C. § 5595 based upon their "involuntary" separations from service. Plaintiff Bell claims entitlement to $36,949.36 for severance pay, attorneys fees and costs. Plaintiff Benabe claims entitlement to $10,323.55 for the same items, and plaintiff Sallie claims entitlement to $9,199.04.

### II

Plaintiffs allege that their resignations, submitted at the request of their agency

---

1. Each plaintiff filed a motion for summary judgment on October 31, 1989. Defendant filed a cross-motion for summary judgment in each case on January 16, 1990.

supervisor after receipt of general RIF notices, should be deemed to constitute involuntary separations from service. Plaintiffs claim that their "voluntary" resignations were involuntary because they resulted from misinformation by an agency official who assured plaintiffs that resignation in lieu of separation under the RIF procedures would not affect their entitlement to severance pay. In affidavits attached to plaintiffs' proposed findings of uncontroverted facts, the plaintiffs state that but for the assurance of the agency official that resignation would not affect their entitlement to severance pay, they would not have resigned.

### III

■ The Severance Pay Act, 5 U.S.C. § 5595(b), provides that a federal employee involuntarily separated after more than one year of service is entitled to severance pay. The Tucker Act, 28 U.S.C. § 1491, grants the Claims Court jurisdiction over claims brought under this provision since 5 U.S.C. § 5595(b) is clearly a money-mandating statute.

■ Defendant contends that the Merit Systems Protection Board (MSPB), not the Claims Court, has jurisdiction to review a claim that a resignation from government service is actually an involuntary separation. The MSPB clearly has jurisdiction to review such a claim when it arises in the context of an adverse personnel action resulting in alleged right to reinstatement and/or back pay. *See Covington v. Department of Health and Human Services,* 750 F.2d 937 (Fed.Cir.1984); *Scharf v. Department of the Air Force,* 710 F.2d 1572, 1574 (Fed.Cir.1983).

In *Sammt v. United States,* 780 F.2d 31, 33 (Fed.Cir.1985), a military pay case, the Federal Circuit indicated that the Claims Court lacks jurisdiction over claims involving an employee's voluntary resignation. Although phrased as a jurisdictional decision, *Sammt* really establishes a rule of law that the exercise of an option to retire from the military is not rendered involuntary by the accurate knowledge of eminent imposition of less desirable alternatives.

Recently, in an *en banc* proceeding, the Federal Circuit reached the same conclusion with respect to MSPB jurisdiction in a case of voluntary resignation where the plaintiff would have faced charges of serious misconduct if he had not resigned. *See Cruz v. Department of Navy,* 934 F.2d 1240 (Fed.Cir.1991) (en banc). In contrast, here the pivotal issue in each case is whether a voluntary resignation was an involuntary separation within the meaning of the Severance Pay Act and implementing regulations. Neither *Sammt* nor *Cruz* prohibits our exercise of jurisdiction over this type of claim.

Defendant also relies on *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), for its argument that the Claims Court lacks jurisdiction because no agency has made a determination regarding the voluntariness of plaintiffs' resignations. In *Fausto,* the Court held that the Claims Court is not an "appropriate authority" under the Back Pay Act, 5 U.S.C. § 5596(b)(1), to determine whether an agency's challenged personnel action was unwarranted or unjustified. Defendant seeks to have *Fausto*'s holding concerning Back Pay Act cases extended to Severance Pay Act cases. Transcript of hearing, 12/18/90, p. 30.

■ Before suit can be brought in the Claims Court under the Back Pay Act, an "appropriate authority" must find that the employee was affected by an unjustified or unwarranted personnel action resulting in the withdrawal or reduction of pay. 5 U.S.C. § 5596(b)(1). Such an authority may include the agency or the MSPB but may not include the Claims Court. *Fausto,* 484 U.S. at 454, 108 S.Ct. at 676.

Defendant argues that before suit can be brought in the Claims Court under the Severance Pay Act, an agency must first make a determination concerning involuntary separation similar to the finding of an unjustified or unwarranted personnel action made by an appropriate authority under the Back Pay Act. Since no such determination was made in this case, defendant argues that the Claims Court is without jurisdiction to entertain plaintiffs' claims.

However, the Severance Pay Act contains no provision requiring a predicate determination of improper adverse personnel action by an independent body as a prerequisite to an action for severance pay. *See* 5 U.S.C. § 5595. *Cf.* 5 U.S.C. § 5596(b).

Defendant also relies on *Turvene v. United States*, 14 Cl.Ct. 227 (1988) for the proposition that jurisdiction in cases of this type resides with the MSPB and not with the Claims Court. In *Turvene*, the Claims Court held that it lacked subject matter jurisdiction over a Back Pay Act claim when the only unjustified or unwarranted personnel action involved was an alleged involuntary retirement and that the jurisdiction to determine whether a retirement was involuntary belonged to the MSPB. It appears that the Claims Court was without jurisdiction over the claim in *Turvene* because the plaintiff claimed that he had suffered an unjustified or unwarranted personnel action in the form of an involuntary retirement. He sought retroactive reinstatement with resulting right to back pay. After *Fausto*, the Claims Court is not an "appropriate authority" under the Back Pay Act for purposes of determining whether a plaintiff has suffered an unwarranted or unjustified personnel action whether it be in the form of an involuntary retirement or otherwise. The Claims Court lacked jurisdiction in *Turvene* because there had been no finding by an "appropriate authority" that the plaintiff had suffered an unwarranted or unjustified personnel action, not because the MSPB has exclusive jurisdiction over claims involving involuntary resignations no matter what the context. Plaintiffs are not claiming that the RIF was unwarranted or unlawful; they do not seek reinstatement or back pay or relief from any other adverse, unwarranted or unjustified personnel action which only their agency or the MSPB can correct. Plaintiffs simply seek severance pay based on the facts surrounding their separation from service.

■ The three plaintiffs were notified by a general RIF notice that their positions would be abolished by a certain date. If the plaintiffs had not resigned but had been reassigned, separated or demoted pursuant to a subsequent specific RIF notice, then they could have appealed any perceived unjustified or unwarranted personnel action to the MSPB. 5 C.F.R. §§ 351.901, 351.902. The fact that they could have appealed the merits of a RIF separation to the MSPB does not preclude Claims Court jurisdiction over their severance pay claims. Plaintiffs are not contesting the merits of their separation here. They simply claim entitlement to severance pay under the plain language of the Severance Pay Act.

It is overbroad to say simply that a certain board or court does or does not have jurisdiction over voluntary resignations. Before jurisdictional issues may be resolved, it must further be known what statute, if any, is asserted as the basis for relief (e.g., Back Pay Act, Severance Pay Act, statutes which entitle one to the compensation of his grade for services rendered) and the relief requested (e.g., promotion, reinstatement to active service, reinstatement to former position or mere compensation for pay or allowances for services actually rendered or with respect to events which have actually occurred).

■ Mere failure by a government agency to pay money due is not the kind of adverse personnel action contemplated in the Back Pay Act. We are not called upon to correct an adverse personnel action. No correction of an unjustified or unwarranted personnel action is sought, and no relief in the nature of injunction or declaratory relief is sought. Plaintiffs' claims are analogous to ones for unpaid salary for time actually worked.

The Claims Court is an appropriate forum to interpret and apply regulations in connection with severance pay claims.

IV

■ The Severance Pay Act entitles an employee to severance pay if the employee has been employed for a continuous period of at least 12 months and is involuntarily separated from service. The Act provides:

Under regulations prescribed by the President or such officer or agency as he may designate, an employee who—

(1) has been employed currently for a continuous period of at least 12 months; and

(2) is *involuntarily separated* from the service, not by removal for cause on charges of misconduct, delinquency, or inefficiency;

is entitled to be paid severance pay in regular pay periods by the agency from which separated.

5 U.S.C. § 5595(b) (emphasis added).

It is uncontested that all three plaintiffs were employed by FAA for a continuous period of at least 12 months and were not separated for misconduct, delinquency or inefficiency. The sole remaining issue is whether their resignations may be considered involuntary separations from service. The Act does not define the term "involuntarily separated," however, a regulation promulgated thereunder provides guidance. Title 5 C.F.R. § 550.706 states:

(a) Except as provided for in paragraph (b) of this section, an employee who is separated because of resignation is deemed to have been involuntarily separated for purposes of entitlement to severance pay, if he has not declined an offer of an equivalent position under [another regulation], when he is separated because of resignation (1) after receiving a specific notice in writing by his agency that he is to be involuntarily separated not by removal for cause on charges of misconduct, delinquency, or inefficiency, (2) after receipt of a general notice of reduction in force by his agency which announces that all positions in his competitive area will be abolished or transferred to another commuting area and his resignation is effective on a date which is not more than 1 year before the abolition or transfer....

(b) When the facts and circumstances available to an agency show that a resignation under paragraph (a) of this section *is unrelated to the issuance of one of the notices specified* in that paragraph, separation of the employee by resigna-tion is a voluntary separation under section 5595 of title 5, United States Code. (Emphasis added.)

Defendant argues that the plaintiffs are not eligible for severance pay benefits under this regulation because they did not receive a specific notice of involuntary separation and because the general reduction-in-force notice which they received did not announce that all positions in their competitive area would be abolished or transferred to another commuting area. It is undisputed that the plaintiffs resigned before they received specific written notices of involuntary separation.

■ Provisions governing eligibility for severance pay due to involuntary separation are to be construed liberally and generously in favor of the employee. *Spring v. United States,* 492 F.2d 1053, 1054 (4th Cir.1974); *Santora v. United States,* 9 Cl.Ct. 182, 186 (1985); *Sullivan v. United States,* 4 Cl.Ct. 70, 74–75 (1983), *aff'd per curiam,* 742 F.2d 628 (Fed.Cir.1984).

The regulation clearly contemplates that there may be voluntary resignations prior to receipt of a specific RIF notice which will be deemed *involuntary separations.* The quoted portion of the regulation actually contemplates two situations in which an employee's resignation may be considered an involuntary separation. The first category involves employees who have received specific notices of involuntary separation. If an employee resigns after receipt of such specific notice then he is deemed involuntarily separated. The plaintiffs in this case do not fall literally within this category since they resigned before receipt of a specific written notice of involuntary separation.

The second category involves employees who resign after a general RIF notice that all positions in their competitive area (the Memphis area for these plaintiffs) will be abolished or transferred to another area. We conclude that the general notice to plaintiffs combined with the requests and assurances from their supervisor constituted the substantial equivalent of a general RIF notice that all positions in their area would be abolished.

The general RIF notices received by the plaintiffs did not specifically state that all positions in the plaintiffs' competitive area were being abolished. *See* 5 C.F.R. § 550.706(a). The notices did say that plaintiffs' jobs were to be abolished. We find that, in context, the action announced by the general RIF notices in combination with other communications from plaintiffs' FAA supervisor was substantially equivalent to an announcement that all positions in the plaintiffs' competitive area were being abolished. The RIF notices eliminated the entire en route training and automation staff at the FAA Memphis center. Only those employees with controller experience were likely to be reassigned to another position at the same facility. *See* Complaint, Exhibit 1. The announced action essentially eliminated all FAA positions for which the plaintiffs would be eligible unless they had air traffic controller experience. In addition to the precise general RIF notices received by plaintiffs in that context, plaintiffs' FAA supervisor *requested* that each plaintiff voluntarily resign. It was explained that such action on their part would be an accommodation to the agency as it would eliminate the need for formal action and resulting paperwork in connection with the RIF and it would not affect plaintiffs' entitlement to severance pay. Given the regulatory framework for the receipt of benefits upon voluntary resignation, this was tantamount to telling plaintiffs that all jobs for which they were eligible were being abolished. Plaintiffs understanding to this effect and their reliance on their supervisor's communication was reasonable.

■ The general RIF notices received by the plaintiffs, together with other communications from the FAA, met the requirements of the regulation and the plaintiffs are deemed to have been involuntarily separated.[2]

An aid to interpreting the involuntary separation provisions of subsection (a) of the applicable regulation (5 C.F.R. § 550.706) is furnished by subsection (b) thereof which states that "[w]hen the facts and circumstances available to an agency show that a resignation under paragraph (a) of this section is *unrelated to the issuance of one of the notices specified in that paragraph,* separation of the employee by resignation is a voluntary separation." (Emphasis added.) The resignations of the plaintiffs were *directly* related to the general RIF notice which they received.

At oral argument, government counsel expressed concern that a recovery by plaintiffs in the circumstances of this case would rest upon an estoppel prohibited by *Office of Personnel Management v. Richmond,* — U.S. —, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (government payments are limited to those authorized by statute, and erroneous advice by a government employee to a benefit claimant cannot estop government from denying benefits not otherwise permitted by law). However, our holding does not rest on or assume any such estoppel. We construe the FAA supervisor's assurances to the plaintiffs that they would receive severance pay, in combination with the general RIF notice specifically abolishing their positions and the request that plaintiffs resign to accommodate the FAA, as the substantial equivalent of a notice within the meaning of the regulations implementing the Severance Pay Act that they would be involuntarily separated.

Finally, defendant argues that equity mitigates against a finding that the plaintiffs are entitled to severance pay in this

---

**2.** In the context of adverse personnel actions, a resignation or retirement is involuntary if it is obtained by agency misinformation. *Schultz v. United States Navy,* 810 F.2d 1133 (Fed.Cir. 1987); *Covington v. Department of Health and Human Services,* 750 F.2d 937 (Fed.Cir.1984); *Scharf v. Department of Air Force,* 710 F.2d 1572 (Fed.Cir.1983); *Perlman v. United States,* 490 F.2d 928, 203 Ct.Cl. 397 (1974). There is no requirement that an employee be intentionally deceived about his employment options but rather the employee must show that a reasonable person would have been misled by the agency's statements. *Covington,* 750 F.2d at 942. The misleading information may be negligently or even innocently provided but if the employee materially relies on it to his detriment, then his retirement is considered involuntary. *Id.*

case. It relies on *Akins v. United States*, 439 F.2d 175, 178, 194 Ct.Cl. 477, 484 (1971), for the proposition that the severance pay provisions were intended to provide relief only to those employees who suffer long periods of unemployment following their termination from federal service. Since the plaintiffs in this case were immediately re-employed,[3] defendant argues that they did not suffer the hardships that Congress intended severance pay to alleviate.

The facts in *Akins* are distinguishable from those in these cases. The plaintiffs in *Akins* were employed by a temporary federal agency, the National Capital Transportation Agency (NCTA). When a permanent public non-federal agency was created to assume the same functions, the plaintiffs' positions with the NCTA were abolished and they were offered employment with the new agency, the Washington Metropolitan Area Transit Authority (WMATA). Those plaintiffs accepted the offer and began employment with the new agency on the business day immediately following their last day of employment with the NCTA. Based on these facts, the Court of Claims held that the plaintiffs were not entitled to severance pay. In the present case, the plaintiffs' positions with FAA were abolished and they were told that they could seek employment with the private contractors who were taking over the functions of the en route training and automation staff. This situation is not analogous to *Akins* where another public agency was simply substituted as the employer and the terminated employees could continue to perform their jobs with the new public entity. The equity considerations cannot override the direct statutory entitlement to severance pay provided by the Severance Pay Act for employees who are involuntarily separated from service.

## V

Plaintiffs' motions for summary judgment filed October 31, 1989 are GRANT-ED. Defendant's cross-motions for summary judgment filed on January 16, 1990 are DENIED.

The parties are requested to confer concerning damages and to file in each case, not later than June 3, 1991, either a stipulation of damages or a joint status report concerning remaining matters to be resolved by the court.

---

3. The record does not clearly reflect whether or not the plaintiffs accepted employment following their termination from service with FAA, but we make the assumption in defendant's favor for the purpose of addressing its equity defense.