Joyce A. GAMBRELL, Plaintiff,

v.

UNITED STATES, Defendant.

No. 92–597C.

United States Court of Federal Claims.

Oct. 29, 1993.

Christopher J. Klein, Pittsburgh, PA, for plaintiff.

Hillary A. Stern, Civil Div., U.S. Dept. of Justice, Washington, D.C., with whom were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Asst. Director.

## OPINION

MARGOLIS, Judge.

This severance pay case is before the court on the defendant's motion for summary judgment and the plaintiff's cross motion for summary judgment. The plaintiff is a former employee of the United States Department of the Treasury. After working for the defendant continuously for more than ten years, the plaintiff tendered her resignation on October 10, 1989. The plaintiff alleges that she is entitled to severance pay of $22,222 under the Severance Pay Act because her resignation should be deemed an involuntary separation. After carefully reviewing the record and after hearing oral argument, this court finds material issues of fact in dispute and denies both parties' motions for summary judgment.

## FACTS

The defendant, the United States, acting through the Department of the Treasury, United States Secret Service ("Secret Service"), hired the plaintiff, Joyce A. Gambrell ("Gambrell"), on February 7, 1972. The Secret Service assigned Gambrell to its field office in Anchorage, Alaska on August 1, 1976. The field office in Anchorage only employed Gambrell and one agent, and was under the control and direction of a Secret Service field office located in Seattle, Washington.

In late September 1989, the Secret Service directed Gambrell to report to the Seattle office for a temporary assignment. On October 2, 1989, Gambrell reported to the Seattle office and special agent Clifford S. Jones ("Jones") informed her that the Secret Service was permanently relocating her position to the Seattle office, effective October 10, 1989, because of a declining workload in Anchorage. Jones also told Gambrell that she had to decide whether she would accept permanent relocation by October 6, 1989. The Secret Service admits for purposes of these motions that Jones informed Gambrell that she would not be paid and would be reported absent without permission if she refused relocation and did not report for work at the Seattle office on October 10, 1989. The parties dispute, however, that Gambrell reasonably believed the Secret Service would terminate her employment if she did not accept relocation and refused to report for work in Seattle on the specified date.

On October 3, 1989, the Secret Service extended Gambrell's temporary assignment to the Seattle office through October 20, 1989. On October 6, 1989, Gambrell tendered her resignation, effective October 10, 1989, stating she did not want to transfer to the Seattle office.

Gambrell challenged the validity of her resignation before the United States Merit Systems Protection Board ("MSPB"). Gambrell asserted that her resignation was ineffective because it was not voluntary. On July 2, 1990, Administrative Judge James H. Freet found that Gambrell's resignation was voluntary. Gambrell appealed Administrative Judge Freet's initial decision to the full MSPB. The full MSPB denied Gambrell's petition for review by order on November 7, 1990, converting the initial decision to a final board action. The United States Court of Appeals for the Federal Circuit affirmed the MSPB's decision on July 16, 1991. 940 F.2d 677. This lawsuit followed.

## DISCUSSION

■ Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. RCFC 56. All justifiable inferences are to be drawn in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

This dispute is over the interpretation and application of the Severance Pay Act, 5 U.S.C. § 5595(b). The Severance Pay Act ("Act") authorizes severance pay for former federal employees who meet a two-part test. The Act provides, in pertinent part:

> Under regulations prescribed by the President or such officer or agency as he may designate, an employee who—
>
> (1) has been employed currently for a continuous period of at least 12 months; and
>
> (2) is *involuntarily separated* from the service, not by removal for cause on charges of misconduct, delinquency, or inefficiency;
>
> is entitled to be paid severance pay in regular pay periods by the agency from which separated.

5 U.S.C. § 5595(b) (1988) (emphasis added).

The parties agree that Gambrell qualifies under the first prong of the Act's inquiry. It is uncontroverted that the Secret Service employed Gambrell continuously for more than 12 months. Gambrell worked for the Secret Service from February 1972 until her resignation in October 1989.

The crux of the parties' dispute is whether Gambrell qualifies under the second prong of the Act's inquiry. More precisely, the parties' only point of contention is whether Gambrell was "involuntarily separated" from the Secret Service. Gambrell asserts that her resignation should be deemed an involuntary separation. The Secret Service argues that Gambrell's resignation was exactly that, a voluntary resignation, and not an involuntary separation.

Neither the Act nor applicable regulations[1] define the phrase "involuntarily separated." *Bell v. United States*, 23 Cl.Ct. 73, 78 (1991); *Santora v. United States*, 9 Cl.Ct. 182, 185 (1985). However, the regulations which implement the Act provide guidance as to when an involuntary separation is deemed to have occurred. *See* 5 C.F.R. §§ 550.705 and 550.706 (1990). Those regulations provide:

§ 550.705 Failure to accept assignment.

When an employee is separated because he declines to accept assignment to another commuting area, the separation is an involuntary separation not by removal for cause on charges of misconduct, delinquency, or inefficiency for purpose of entitlement to severance pay, unless his position description or other written agreement or understanding provides for these assignments.

§ 550.706 Resignation in lieu of involuntary separation.

(a) Except as provided for in paragraph (b) of this section, an employee who is separated because of resignation is deemed to have been involuntarily separated for purposes of entitlement to severance pay, if he has not declined an offer of an equivalent position under § 550.701(b)(2), when he is separated because of resignation (1) after receiving a specific notice in writing by his agency that he is to be involuntarily separated not by removal for cause on charges of misconduct, delinquency, or inefficiency, (2) after receipt of a general notice of reduction in force by his agency which announces that all positions in his competitive area will be abolished or transferred to another commuting area and his resignation is effective on a date which is not more than 1 year before the abolition or transfer, and (3) after receipt of a notice by his agency proposing to separate him for declining to accompany his activity when it is to be moved to another commuting area because of a transfer of function and when all positions in his competitive area are to be abolished or transferred to another commuting area within a period of not more than 1 year.

Gambrell's resignation cannot be deemed an involuntary separation under section 550.705 for purposes of qualifying for severance pay under the Act.[2] Section 550.705 only addresses the situation where the Government discharges an employee, not the situation where an employee resigns. *Giknis v. United States*, 19 Cl.Ct. 721, 724 (1990). The juxtaposition of sections 550.-705 and 550.706 compels this conclusion. As the court in *Giknis* held:

Putting the two regulations side-by-side makes it immediately apparent that section 550.705 deals with employer-initiated separations while section 550.706 covers employee-initiated separations. Failure to make this distinction would lead to a conflict in regulations: two different provisions—and, accordingly, two different

---

1. Only those regulations in effect at the time of the operative facts govern this case. *See infra* note 2.

2. The plaintiff raised this argument by asserting the applicability of 5 C.F.R. § 550.703(b) (1993), a provision which defines "involuntary separation." That section provides:

*Involuntary separation* means a separation initiated by an agency against the employee's will and without his or her consent for reasons other than inefficiency.... In addition, when an employee is separated because he or she declines to accept reassignment outside the commuting area, the separation is "involuntary" if the employee's position description or other written agreement does not provide for such a reassignment.

5 C.F.R. § 550.703(b)

Prior to March 28, 1990, section 550.703 did not expressly define the term "involuntary separation." *See* 55 Fed.Reg. 6591, 6593 (1990). Rather, the language Gambrell relies on for her argument was contained in section 550.705.

standards—would govern severance pay entitlement for employees who resign in lieu of accepting transfer to another commuting area.

*Id.* at 724.

Gambrell's resignation could be deemed an involuntary separation under section 550.706. Section 550.706 contemplates three circumstances under which a federal employee's resignation may be treated as an involuntary separation. Pursuant to 5 C.F.R. § 550.706, a resignation is deemed an involuntary separation if the employee resigns: (1) after receiving specific written notice that his agency-employer intends to discharge him; (2) after receiving general notice of a reduction in force which would eliminate his position; or (3) after receiving notice that his agency-employer intends to separate him for refusing relocation to another commuting area. The first two of these situations do not apply to the facts of this case. The Secret Service did not give Gambrell either specific written notice of an intent to discharge her or general notice of a reduction in force. However, the court finds the third category applicable to the facts of this case.

■ The statements Jones made to Gambrell may qualify as "receipt of a notice by [the Secret Service] proposing to separate [her] for declining to accompany [her] activity when it is to be moved to another commuting area...." 5 C.F.R. § 550.706. The defendant offers three reasons for asserting that any such oral representations are insufficient, as a matter of law, to meet the requirements of section 550.706. First, the defendant argues that section 550.706 requires prior *written* notice as a condition of deeming the resignation an involuntary separation. Second, the defendant argues that section 550.706 must be applied strictly to require that the notice actually threaten involuntary separation for failure to comply with a reassignment. Finally, the defendant argues that awarding severance pay to Gambrell by deeming her resignation an involuntary separation is contrary to public policy because it undermines the Government's ability to make personnel decisions. The court

addresses and rejects these arguments *seriatim.*

Gambrell's resignation may be deemed an involuntary separation even though she did not receive written notice from the Secret Service prior to resigning. Section 550.706 does not require *written* notice if an employee resigns after learning that his agency-employer intends to separate him for refusing relocation to another commuting area. As noted, section 550.706 proposes three situations where a federal employee's resignation may be deemed an involuntary separation. Each of these circumstances presumes receipt of notice before resignation. Moreover, section 550.706 requires a different level of notice for each situation: "specific written notice" in the first case; "general notice" in the second case; and "notice" in the third case. The fact that the regulation expressly requires written notice in the first case and does not so provide in the second and third cases compels the conclusion that written notice is not required in those instances. Any other conclusion would be inconsistent with the mandate that courts construe the provisions regarding eligibility for severance pay under the Act "liberally and generously in favor of the employee." *Bell,* 23 Cl.Ct. at 78; *see also Santora,* 9 Cl.Ct. at 186; *Sullivan v. United States,* 4 Cl.Ct. 70, 74–75 (1983), *aff'd per curiam,* 742 F.2d 628 (Fed.Cir.1984).

■ The notice Gambrell alleges she received may be sufficient to establish her entitlement to severance pay under the Act even though it did not contain an express proposal to separate her if she refused relocation. Strict compliance with the terms of section 550.706 is not required. *See Santora,* 9 Cl.Ct. at 186–87. In that case, the agency-employer notified the plaintiff by letter that his failure to accept relocation "*could* result in a charge of failure to follow supervisory instructions, place [him] in an absent-without-leave status, and *could* constitute grounds for involuntary separation." *Id.* at 184 (emphasis added). Despite that fact that the plaintiff did not receive notice expressly "proposing to separate him," 5 C.F.R. § 550.706, the

court found the "plaintiff was *well warranted* in construing the total letter as a notice that he would be removed if he did not comply." *Id.* at 186–87 (emphasis added). Similarly, Gambrell could have reasonably understood Jones's message as a warning that she would be removed if she did not accept relocation. Gambrell alleges Jones told her that she *would* be reported absent without permission and *would not* be paid if she did not report for reassignment in the Seattle. As a long-time federal employee, Gambrell must have known that she could have been involuntarily separated if Jones carried out his threat to report her absent without permission. *See, e.g., Young v. United States Postal Serv.*, No. 86 Civ. 9492 (RLC), 1990 WL 3181, at \*5 1990 U.S.Dist. LEXIS 223, at \*13 (S.D.N.Y. Jan. 11, 1990) ("Unauthorized absences without leave are unquestionably a just cause for termination.") (citing *Davis v. Veterans Admin.*, 792 F.2d 1111, 1113 (Fed.Cir.1986)). It would strain the bounds of reason to conclude that the words of probability in *Santora* are sufficient to meet the requirements of section 550.706, but the words of certainty in this case are not. Therefore, the court finds the representations the plaintiff states the defendant made to her could be found the equivalent of notice proposing to separate her.

■ Deeming the plaintiff's resignation an involuntary separation in this case does not undermine the Government's ability to make personnel decisions. *See Giknis,* 19 Cl.Ct. at 725. In *Giknis,* this court recognized that, under some circumstances, deeming a plaintiff's resignation an involuntary separation contravenes public policy. More specifically, the *Giknis* court was concerned that awarding severance pay under section 550.706 to a former federal employee who resigns more than one year before a scheduled reassignment would inhibit the Government from making personnel decisions. *Id.* at 724–25. As the court in that case held:

> At the time of plaintiff's resignation, his scheduled rotation was too remote in

time to be considered definite. Much could happen in the meantime. For instance, the Agency might experience difficulty in locating other employees suitable for rotation into plaintiff's job description and this in turn could delay plaintiff's own rotation or even prompt the Agency to change course entirely.... To recognize a right of severance under such circumstances would, in effect, permit the employee to precipitate his own involuntary separation rather than have that occur as the consequence of a Government management decision.

*Id.* at 725. The court declines to apply the holding of *Giknis* to the facts of this case. Unlike the plaintiff in *Giknis,* Gambrell tendered her resignation only four days before her reassignment was to become effective, a timeframe which did not usurp the Government's ability to change its management decision. *See Santora,* 9 Cl.Ct. at 184 (resignation tendered three days before reassignment deemed involuntary separation).

Finally, the defendant asserts that the extension of Gambrell's temporary assignment to the Seattle office supports its argument that awarding Gambrell severance pay effectively usurps the Government's management authority. This contention is without merit. Viewing the record in a light favorable to Gambrell, the court finds that the Secret Service did not extend Gambrell's deadline for accepting reassignment even though it may have extended her temporary assignment. The fact that the defendant accepted the plaintiff's resignation, which stated her reasons for resigning, only four days before the effective date of her reassignment confirms this conclusion. If by October 6, 1989, the Secret Service "had still not made up its mind to discharge plaintiff if [she] failed to relocate, it could reasonably have been expected to have told plaintiff [she] was mistaken rather than have accepted [her] 'involuntary' resignation without comment." *See Santora,* 9 Cl.Ct. at 187.[3]

---

**3.** The MSPB's finding that Gambrell voluntarily resigned does not affect the decision of this court because the MSPB was not applying the Act and its implementing regulations.

Because the parties dispute a genuine issue of material fact, specifically the effect on Gambrell of the representations Jones made to her, the court denies the parties' cross motions for summary judgment.

## CONCLUSION

For the foregoing reasons, this court denies the defendant's motion for summary judgment and denies the plaintiff's cross motion for summary judgment. The parties have 90 days from the date of this opinion to complete discovery.