Michael J. ALEXANDER,
pro se, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 01–540C.

United States Court of Federal Claims.

June 12, 2002.

Michael J. Alexander, Bellevue, MI, plaintiff, pro se.

William K. Olivier, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. Lt. Col. Bruce D. Lennard, United States Air Force, of counsel.

### ORDER

MILLER, Judge.

Before the court is defendant's motion to dismiss plaintiff's claims for reinstatement to his position as a National Guard technician and/or for back pay or, in the alternative, for severance pay. At issue is whether the court has jurisdiction over claims brought by National Guard technicians or whether such claims lie within the exclusive jurisdiction of the state adjutants general. As plaintiff is proceeding *pro se*, the court ordered additional briefing in lieu of oral argument.

### FACTS

Michael J. Alexander ("plaintiff") was employed as a civilian instructor pilot with the Michigan Air National Guard ("MANG"). MANG suspended plaintiff's security clearance based on allegations that plaintiff abused alcohol. On July 28, 1995, plaintiff's commander ordered plaintiff to Wright–Patterson Air Force Base ("Wright–Patterson") for 30 days of unprescribed alcohol rehabilitation, instructing plaintiff that failure to comply with the order would result in his termination. Plaintiff did not attend alcohol rehabilitation treatment and was terminated as a technician on September 29, 1995, for failing to maintain flying status and required security clearance. According to the Notification of Personnel Action sent to plaintiff, MANG considered plaintiff to have resigned his position voluntarily and thus to be ineligible for severance pay.

On October 28, 1995, MANG further informed plaintiff that, if he did not attend

alcohol rehabilitation treatment, he would be dishonorably discharged from the National Guard unless he voluntarily resigned first. Plaintiff resigned.

At the request of plaintiff's congressional representative in 1998 and 1999, the Inspector General of the Department of Defense investigated the circumstances of plaintiff's resignation. In his report dated August 23, 2001, the Inspector General concluded that, although plaintiff's commander had authority to ground plaintiff and order him to seek treatment for alcoholism, his order that plaintiff seek 30–day treatment at Wright–Patterson exceeded his authority. The Inspector General concluded, first, that two evaluators at the local base already had determined that plaintiff did not have an alcohol problem and that the commander's order therefore violated applicable Air Force regulations. Second, plaintiff was not eligible for the rehabilitation program at Wright–Patterson because his condition was not incurred "in the line of duty." Third, contrary to plaintiff's termination order, plaintiff had not lost his security clearance. Because plaintiff's commander lacked authority to suspend plaintiff's security clearance, plaintiff still maintained security clearance at the time of his termination. In sum, the Inspector General concluded that plaintiff's termination was not in accordance with regulatory provisions.

According to defendant, plaintiff subsequently and unsuccessfully sought reinstatement. The Declaration of Major General E. Gordon Stump, the Adjutant General of Michigan, asserts that plaintiff twice sought and was denied reinstatement. On the second attempt, plaintiff submitted the Inspector General's report. General Stump takes the position that he is not bound by that report and explains that, in his opinion, the managerial errors noted by the Inspector General do not prove plaintiff's fitness for a civilian technician position.

Plaintiff now sues in the Court of Federal Claims, alleging violations of the Due Process Clause of the Fifth Amendment; the Due Process and Equal Protection Clauses of the Fourteenth Amendment as applicable to the Federal Government; and violations of the National Guard Technicians Act of 1968, 32 U.S.C. § 709 (2000) (the "NGTA"). Plaintiff alleges that neither his employment termination nor his resignation from the National Guard was voluntary, and he seeks reinstatement and/or back pay under the Back Pay Act, 5 U.S.C. § 5596 (2000). Alternatively, plaintiff seeks severance pay under 5 U.S.C. § 5595(b) (2000).

Defendant moves to dismiss under RCFC 12(b)(1) and 12(b)(4) on the grounds that plaintiff mooted his right to reinstatement by voluntarily resigning from the National Guard; that review of plaintiff's termination lies exclusively with the Adjutant General of Michigan; and that, in any case, plaintiff's termination involves internal military affairs and thus does not present a justiciable controversy that this court could resolve. Supplemental briefing was ordered on the issue of whether remand to Michigan's Adjutant General was appropriate and whether RCFC 60.1 provides for such a remand. Defendant also was to address the question of an appropriate remedy short of reinstatement. The court noted that plaintiff's jurisdictional argument implicated material outside the pleadings and ordered the filing of proposed findings of fact related to the jurisdictional issue only. See Indium Corp. of Amer. v. Semi–Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir.1985) (if motion to dismiss raises question as to truth of jurisdictional allegations in complaint, court may consider, in deciding 12(b)(1) motion, evidentiary matters outside pleadings). Upon reviewing the supplemental briefs, the court in an order entered on April 10, 2002, determined that remand was not appropriate.

## DISCUSSION

### 1. Standards for motion to dismiss

When a federal court reviews the sufficiency of the complaint, whether for failure to state a claim or for lack of subject matter jurisdiction, "its task is necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id.

The court follows the "the accepted rule that a complaint should not be dismissed ... unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *accord New Valley Corp. v. United States*, 119 F.3d 1576, 1579 (Fed.Cir.1997). To this end, the court must accept as true the facts alleged in the complaint, *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), and must indulge all reasonable inferences in favor of the non-movant, *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995) (holding courts obligated "to draw all reasonable inferences in plaintiff's favor"). Therefore, a motion to dismiss must be denied if relief can be granted "under any set of facts that could be proved consistent with the allegations." *NOW v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). In considering defendant's motion, the court is mindful that complaints filed by *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam).

## 2. Whether plaintiff's claims are justiciable

■ Defendant makes two arguments to establish that plaintiff's claims are not amenable to resolution by the court. It first argues that the court lacks jurisdiction over plaintiff's claims because all questions regarding the loss of plaintiff's civilian position are rendered moot by plaintiff's voluntary resignation from the National Guard. Broadly, a claim is moot when it is no longer "live," *i.e.* when "the parties lack a legally cognizable interest in the outcome," and jurisdiction does not lie because there is no reasonable expectation the wrong will reoccur and interim events have eradicated the effects of the alleged violation. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). Unlike the Article III constitutional constraints on district courts, mootness considerations in the Court of Federal Claims are based entirely on prudential considerations. *E.g.*,

*Mass. Bay Transp. Auth. v. United States*, 21 Cl.Ct. 252, 257–58 (1990) ("Although established under Article I, the Claims Court traditionally has applied the case or controversy requirement unless jurisdiction conferred by Congress demands otherwise."), *rev'd on other grounds*, 129 F.3d 1226 (Fed. Cir.1997); *Northrop Corp., Northrop Elecs. Sys. Div. v. United States*, 27 Fed.Cl. 795, 800 n.4 (1993) (discussing mootness doctrine and its application by Court of Federal Claims). The burden of proving mootness is a "heavy one." *County of Los Angeles*, 440 U.S. at 631, 99 S.Ct. 1379.

■ Under the NGTA a civilian technician for the National Guard concurrently must be a member of the National Guard. 32 U.S.C. § 709(b)(2); *see Gnagy v. United States*, 225 Ct.Cl. 242, 251, 634 F.2d 574, 579 (1980). Defendant does not further elaborate as to why plaintiff does not have a legally cognizable interest in the outcome, although its argument appears in the nature of one in which changed circumstances leave the court unable to fashion a remedy. It is not readily apparent how the statutory requirement that civilian employment be predicated on National Guard membership would serve to preclude resolving the issue of plaintiff's entitlement to severance pay should the court find reinstatement impossible or unwarranted. When reinstatement is not available, a claim for money damages ordinarily precludes a finding of mootness. *See Powell v. McCormack*, 395 U.S. 486, 499–500, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (mootness of claim to reinstatement does not affect viability of monetary claims for wrongful exclusion from employment). Similarly, the court may award back pay for the period from plaintiff's termination until his resignation from the National Guard. Because plaintiff was a member of the National Guard during the period for which he seeks back pay, the fact that he is not currently a member of the National Guard is legally irrelevant.

Regarding plaintiff's claim for reinstatement or back pay, the court notes that plaintiff was not terminated for loss of military membership, but resigned when MANG gave him the alternative to comply with the order to attend rehabilitation at Wright–Patterson

or face dishonorable discharge. Defendant admits in its proposed findings of fact that plaintiff was honorably discharged from the National Guard and is eligible for re-enlistment. Nothing in plaintiff's resignation precludes plaintiff from applying for re-enlistment should his position as a technician be reinstated, so the fact that he is not currently a National Guardsman does not render his claim for reinstatement moot.

Defendant next argues that plaintiff's claim is a routine military personnel decision beyond the competence of the judiciary to review. A claim is nonjusticiable when, notwithstanding the court's jurisdiction over the claim, the claim is such that the court lacks the ability to supply relief. *See Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Voge v. United States*, 844 F.2d 776, 780 (Fed.Cir.1988). It is true that, "[j]usticiability is a particularly apt inquiry when one seeks review of military activities." *Murphy v. United States*, 993 F.2d 871, 872 (Fed.Cir.1993); *see also Orloff v. Willoughby*, 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953) (courts should be scrupulous not to interfere with legitimate military matters). However, "[n]ot every claim arising from a military decision presents a nonjusticiable controversy." *Adkins v. United States*, 68 F.3d 1317, 1323 (Fed.Cir.1995). Indeed, military claims for wrongful discharge, back pay, severance pay, reinstatement, and assorted remedies routinely are heard and remedied (within statutory limits) by the courts. Although it is beyond this court's expertise or competence to determine whether plaintiff is fit to fly, *see Wilson v. Walker*, 777 F.2d 427, 429 (8th Cir.1985) (claim that military officer improperly reassigned from flight status to non-flying status nonjusticiable), plaintiff does not seek a judicial determination of his fitness to fly. Rather, he seeks to receive back pay or statutory severance pay based on alleged violations of procedures given him by the Constitution and by National Guard regulations. This claim presents a justiciable controversy. *E.g., Adkins*, 68 F.3d at 1323–25 (distinguishing justiciable claim that military personnel violated regulations by ignoring record and considering materials outside record in considering plaintiff's promotion from nonjusticiable claim that military personnel failed to promote plaintiff).

3. *Whether the NGTA bars plaintiff's claims for reinstatement and back pay*

Under the Back Pay Act, 5 U.S.C. § 5596(b)(1), a federal employee who has been "affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee" is entitled to back pay for the period in which the employee suffered the wrongful personnel action. A claim brought for removal predicated on revocation of the employee's security clearance states a claim under the Back Pay Act. *Read v. United States*, 254 F.3d 1064, 1067 (Fed.Cir.2001). While the Court of Federal Claims has jurisdiction to order reinstatement "as an incident of or collateral to" a judgment in a plaintiff's favor, 28 U.S.C. § 1491(a)(2) (2000),[1] it is axiomatic that, in order to award back pay and associated reinstatement the court must have the power to review the personnel action so as to determine whether it was unjustified or unwarranted. *See Read*, 254 F.3d at 1067.

The National Guard is "somewhat of a hybrid" military organization, "which does not fall neatly within the scope of either state or national concerns." *Singleton v. MSPB*, 244 F.3d 1331, 1333 (Fed.Cir.2001). The employment status of a National Guard technician similarly is bifurcated. By passage of the NGTA, National Guard technicians are federal employees for the purpose of providing them with the same fringe and retirement benefits enjoyed by other federal employees. 32 U.S.C. § 709(e); *see Singleton*, 244 F.3d at 1334 (discussing NGTA's

---

1. Despite this statutory mandate, it is unclear whether the court can effect the reinstatement of a National Guardsman, as administration of the National Guard is reserved to the states. *See Singleton v. MSPB*, 244 F.3d 1331, 1336–37 (Fed. Cir.2001) (as adjutant general of the National Guard is not federal employee, Merit Systems Protection Board precluded from ordering the corrective act of reinstatement). Because the court determines that plaintiff's claims for reinstatement and/or back pay are precluded by the NGTA and the CSRA, it does not reach this issue.

legislative history). The statute also created an adjutant general for each state and provides that the adjutants general retain the authority to employ and administer the technicians. *Id.* §§ 314, 709(d). Furthermore, the NGTA reserves to the adjutant generals exclusive jurisdiction over appeals by technicians who have been separated from civilian employment: (1) due to loss of membership in the National Guard; (2) as a result of failure to meet military security standards; (3) for cause; or (4) due to a reduction in force, removal, or an adverse employment action involving discharge, suspension, furlough, or reduction in rank or compensation. *Id.* § 709(f)(1)-(4). Claims not within these categories are subject to the procedural and substantive provisions of the Civil Service Reform Act of 1978, codified in scattered sections of Title V of the United States Code (the "CSRA"). *Booth v. United States,* 990 F.2d 617, 619 (Fed.Cir.1993); *see also Leistiko v. Stone,* 134 F.3d 817, 819–20 (6th Cir. 1998) (per curiam); *Barbee v. United States,* 14 Cl.Ct. 387, 389 (1988).

According to MANG's termination letter to plaintiff, termination was required under Technician Personnel Regulation ("TPR") 715, governing non-disciplinary terminations, because plaintiff failed to meet the requirements of the technician position, specifically failure to maintain flying status and security clearance.[2] Although plaintiff strenuously opposes the conclusion that appeal of his termination was of the type reserved to the adjutant general by the NGTA, he admits that the NGTA expressly reserves two types of non-adverse employment actions to the adjutant general: loss of military membership and loss of security clearance. In the instant case, plaintiff's loss of flying status was predicated upon a failure to maintain flying status and loss of security clearance. Consequently, the NGTA places review of his termination within the office of the adjutant general. Plaintiff's circular attempt to avoid this result by arguing that the adjutant general's exclusive jurisdiction lies only in cases where the initial termination was not erroneous has no basis in law. A termination decision cannot be determined erroneous until it is reviewed. Therefore, the right to review cannot be predicated upon whether the termination decision was erroneous. Although plaintiff has received an interim advisory opinion from the DOD Inspector General that the termination decision was erroneous, the Inspector General's conclusion binds neither the adjutant general nor the court, and the NGTA provides no right to review based on such opinions.

4. *Whether the CSRA bars plaintiff's claims for reinstatement and back pay*

■ Even if the court were to find that the NGTA does not place review of plaintiff's dismissal within the exclusive jurisdiction of the adjutant general, the Court of Federal Claims would lack jurisdiction over plaintiff's claim for back pay by operation of the CSRA. Claims by covered employees may be maintained in those instances where the CSRA does not expressly prohibit such action and the court independently is vested with a basis for jurisdiction. *Worthington v. United States,* 168 F.3d 24, 26 (Fed.Cir.1999); *Bosco v. United States,* 976 F.2d 710, 713–14 (Fed. Cir.1992).

The Court of Federal Claims has jurisdiction over claims brought under the Back Pay Act. *Kanemoto v. Reno,* 41 F.3d 641, 646

---

2. The court rejects defendant's simplistic argument that a discharge for "cause" occurred because plaintiff "was terminated for particular reasons, in other words, for cause." Def.'s Br. filed Feb. 27, 2002, at 7. A separation for cause is defined in and governed by TPR 752. Plaintiff's Form SF–50 and termination letter did not cite TPR 752, separation for cause, but, rather, TPR 715, termination for failure to maintain flying status. Furthermore, according to TPR 752 ¶ 2.3(a), a discharge for cause is a discharge predicated on "an offense against the employer-employee relationship." The TPR lists numerous offenses which justify separation for cause, none of which was applied to plaintiff. It also lists numerous procedural processes that must be followed, such as a hearing, none of which was applied to plaintiff. According to defendant, a dismissal for any reason under TPR 715 automatically becomes a removal for cause as defined in TPR 752. Defendant cites no authority for this proposition; moreover, it is facially inconsistent with the regulatory provisions governing discharge for cause, which state that "actions addressed in TPR 715 do not constitute an adverse action covered by TPR 752." TPR 752 ¶ 2.1(b)(1).

(Fed.Cir.1994). However, the CSRA expressly mandates that in cases involving removal, National Guard technicians are not employees entitled to appeal removal decisions to the Merit Systems Protection Board. 5 U.S.C. § 7511(b)(5) ("This subchapter does not apply to an employee ... who is described in section 8337(h)(1), relating to technicians in the National Guard ....").[3] The Supreme Court in *United States v. Fausto*, 484 U.S. 439, 447–48, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), held that, as the CSRA thereby expresses congressional intent not to allow appeal by certain categories of employees, those employees also are precluded from seeking any judicial review of removal decisions. Therefore, the Court of Federal Claims cannot review the underlying dismissal and lacks jurisdiction over any claim brought by a National Guard technician under the Back Pay Act. *Booth*, 990 F.2d at 619–20; *Leistiko*, 134 F.3d at 820 (court lacked jurisdiction over plaintiff's claim for back pay based on argument that adjutant general erred in his determination that plaintiff failed to maintain flying status).[4]

*Leistiko*, a case on point, involved a National Guardsman, employed as a civilian supervisory aircraft pilot pursuant to the NGTA, who sought back pay after he was dismissed for failure to maintain flying status. The Sixth Circuit determined that, because failure to maintain flying status necessitates removal under TPR 715, the CSRA's removal subchapter was applicable. 134 F.3d at 819–20. That subchapter, however, expressly precluded appeals by National Guard technicians, so plaintiff's claim for back pay was not subject to judicial review, even assuming that the adjutant general had misapplied TPR 715. *Id.* Nothing in this case necessitates a different result.

In an exercise of diligence and thoughtfulness that could put many practicing attorneys to shame, plaintiff challenges the result in *Leistiko*, reasoning that, whereas under the CSRA's statutory scheme a removal action is considered an "adverse" personnel action, removal under TPR 715 is considered a "non-adverse" action. Indeed, in an often-quoted passage, the Supreme Court in *Fausto* recognized that the CSRA "comprehensively overhauled the civil service system" and created an "elaborate new framework for evaluating *adverse* personnel decisions." 484 U.S. at 443, 108 S.Ct. 668 (emphasis added) (quoting *Lindahl v. OPM*, 470 U.S. 768, 773, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985)). Nonetheless, although *Fausto* repeatedly describes removal as an "adverse" personnel action, this court can find nothing in *Fausto's* reasoning that relies on a distinction between adverse and non-adverse personnel actions, as that distinction is employed by the National Guard.

According to the documents submitted by plaintiff, the National Guard distinguishes between the disciplinary action of adverse "removal" and the non-disciplinary, non-adverse action of "termination." A removal action affords the affected employee certain procedural and substantive safeguards that are not deemed necessary for non-disciplinary actions. In contrast, the court has reviewed *Fausto* and the relevant CSRA provisions and cannot divine any further meaning of the use of the term "removal" beyond a separation from the Civil Service not initiated by the employee. *See Khan v. United States*, 201 F.3d 1375, 1377 (Fed.Cir.2000) (involuntary retirement is a removal within the meaning of CSRA subchapter 75); *cf. Berube v. GSA*, 820 F.2d 396, 398 (Fed.Cir. 1987) (in absence of specific reference, "removal" under CSRA section 7542 means removal from the Civil Service). In this sense, removal under the CSRA is certainly "adverse" insofar as it connotes an involuntary separation from the Civil Service. The court must conclude that the National Guard's distinction between adverse and non-adverse separations under certain circumstances and its use of the term "termination" in contrast

---

**3.** Under the CSRA a National Guard technician is defined as someone employed under the NGTA. 5 U.S.C. § 8337(h)(1).

**4.** The Court of Federal Claims is split as to the impact of an amendment to the CSRA on the continued viability of *Fausto's* preclusion of judicial review. *Compare Bailey v. United States*, 52 Fed.Cl. 105, 106–07 (2002), *with O'Connor v. United States*, 50 Fed.Cl. 285, 289–93 (2001), *appeal docketed*, No. 02–5016 (Fed.Cir. Oct. 5, 2001).

to "removal" for dismissals predicated on failure to maintain flying status and security clearance cannot defeat the CSRA's contemplation that separation from employment by National Guardsmen is not subject to judicial review.

### 5. Whether plaintiff's claim for severance pay is barred by voluntary separation

 The court has jurisdiction over a claim for severance pay. *Bell v. United States*, 23 Cl.Ct. 73, 75 (1991). Moreover, National Guard technicians appointed to the Civil Service by the adjutants general explicitly are entitled by statute to make claims for severance pay. 5 U.S.C. § 2105(a)(1)(F), (3).[5] A federal employee who has been employed currently for a continuous period of at least 12 months and is involuntarily separated from the service, "not by removal for cause on charges of misconduct, delinquency, or inefficiency," is entitled to be paid severance pay. 5 U.S.C. § 5595(b). This provision is to be construed liberally and generously in favor of the federal employee. *Bell*, 23 Cl.Ct. at 78; *Santora v. United States*, 9 Cl.Ct. 182, 186 (1985).

The statute does not define involuntary separation. By regulation, an involuntary separation from service for purposes of severance pay is a "separation initiated by an agency against the employee's will and without his or her consent for reasons other than inefficiency." 5 C.F.R. § 550.703 (2002); *see also Sullivan v. United States*, 4 Cl.Ct. 70, 75 (1983), *aff'd* 742 F.2d 628 (Fed.Cir.1984) (discussing similar definition in Office of Personnel Management regulations that preceded 1990 enactment of C.F.R. provision). The question of voluntariness is a factual one; it is the true substance of the action which governs, rather than the methods followed or the terminology used. *Patterson v. United States*, 193 Ct.Cl. 750, 755, 436 F.2d 438, 440 (1971); *Sullivan*, 4 Cl.Ct. at 75.

The adjutant general determined that plaintiff was not entitled to severance pay on the ground that failure to maintain flying status and security clearance was a voluntary separation from the service. The adjutant general cited no authority for this conclusion. TPR 715, the basis for plaintiff's termination, while describing a covered termination as non-disciplinary, is silent on the issue of the voluntariness of a termination under its coverage. In any case, a court is not bound by the agency's characterization of the termination. Even voluntary resignations may be the basis for severance pay if the facts of the retirement contraindicate that the retirement was voluntarily made. *See Schultz v. United States Navy*, 810 F.2d 1133, 1135–36 (Fed. Cir.1987) (voluntary resignation rendered involuntary when plaintiff misled about circumstances of voluntary resignation); *Colon v. United States*, 32 Fed.Cl. 481, 488 (1994) (same). Although the failure to maintain a requirement for the position can be seen as a "voluntary" act, it remains in the realm of facts particular to each case whether the employee's loss of status and subsequent loss of employment can be considered voluntary for purposes of severance pay eligibility. *See Abella v. United States*, 34 Fed.Cl. 452, 456 (1995) (security clearance revoked for serious allegations of misconduct is involuntary termination for inefficiency precluding award of severance pay), *aff'd* 98 F.3d 1359 (Fed.Cir. 1996) (unpublished table decision); *Terrill J. Kawcak*, 62 Comp. Gen. 625, 1983 WL 26242 (1983) (National Guard technician terminated after losing military membership entitled to severance pay).

Defendant makes no specific argument regarding plaintiff's claim for severance pay. As discussed above, defendant has not established that plaintiff was discharged for "cause," a finding of which, in any case, would not be conclusive of whether plaintiff was removed on charges of misconduct, delinquency, or inefficiency. Plaintiff's claim for severance pay under 5 U.S.C. § 5595(b) thus survives defendant's motion to dismiss.

---

**5.** The pleadings are devoid of facts from which the court can determine whether plaintiff is eligible to receive state retirement benefits so as to preclude his claim for federal severance pay. *See* 5 U.S.C. § 5595(a)(2)(B)(iv) (precluding claims by members of uniformed service eligible under other retirement statutes or participating in other retirement systems).