**John B. GOODRICH, d/b/a Checkerboard Cattle Co., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 04–9830C.

United States Court of Federal Claims.

Jan. 14, 2005.

Karen J. Budd–Falen, Cheyenne, WY, for plaintiff.

G. Evan Pritchard, Washington, DC, with whom was Assistant Attorney General Thomas L. Sansonetti, for defendant. Chris Everett, United States Department of Agriculture, Missoula, MT, of counsel.

### *ORDER*

CHRISTINE ODELL COOK MILLER, Judge.

This case is before the court on defendant's motion to dismiss a claim for an uncompensated taking of an alleged property right for lack of subject matter jurisdiction

pursuant to RCFC 12(b)(1). Defendant asserts that the landowner's claim is barred by the six-year statute of limitations under 28 U.S.C. § 2501 (2000), because the claim accrued on February 28, 1997, the date on which a Record of Decision ("ROD"), an agency action that defendant deems to signal the requisite impact on the water rights associated with plaintiff's grazing permits, was issued. Plaintiff did not file his complaint until June 9, 2004. Argument is deemed unnecessary.

## FACTS

The following factual recitation appropriately is drawn from plaintiff's complaint, including the attached exhibits, as well as the exhibits attached to defendant's motion and plaintiff's opposition.

John B. Goodrich ("plaintiff") owns a "federal lands ranch"[1] in Montana. Plaintiff purchased the ranch, known as the Checkerboard Cattle Company (the "CCC"), in May of 1990. The ranch includes approximately 9,000 acres of private fee land and approximately 21,964 acres of federal grazing allotments. Plaintiff holds term grazing permits on the Whitetail, Cooper Creek, Lower Spring Creek, and Flagstaff grazing allotments, and receives annual authorization from the United States Department of Agriculture, United States Forest Service (the "Forest Service") to graze his livestock on these allotments. Plaintiff alleges that the CCC has been the only permittee authorized to graze on the Whitetail Allotment—the primary allotment at issue here—since before the Lewis and Clark National Forest (the "National Forest") was created.

In addition to the allotment permits, plaintiff, in his view, "owns" the private water rights for the listed allotments. Compl. filed June 9, 2004, ¶ 7. Because such water rights are governed by Montana state law, plaintiff has completed and filed Notices of Water Rights with the state of Montana. Specifically, plaintiff alleges that he has filed thirty-nine separate such Notices with the state of Montana for stock watering use on the Whitetail Allotment. Plaintiff claims that he has never authorized the Forest Service or a third party to use his water rights.

Under a 1987 Whitetail Allotment Management Plan (the "AMP"), attached to plaintiff's grazing permit, plaintiff, as the "current permittee," was to receive any additional grazing use of the Whitetail Allotment, expressed in terms of animal unit months ("AUMs"). In 1991 the National Forest began a range assessment for allotments located in the Castle Mountains east of White Sulphur Springs, Montana, including the Whitetail Allotment. This review addressed the possibility of changing the allotment configurations of the area.

On July 12, 1993, a meeting occurred at the Musselshell Ranger District Office, which included Rod Cole, a CCC representative; Randy Wildman, ranch manager for a Mr. Kennedy; and Wayne Butts, a Forest Service Range Conservationist. At the meeting Mr. Butts proposed placing some of Mr. Kennedy's cattle into the Whitetail Allotment granted to the CCC. Mr. Cole objected to such action for a variety of reasons: 1) The Whitetail Allotment is a part of plaintiff's ranch, and the CCC, not Mr. Kennedy's ranch, has the rights regarding how to use those allotments; 2) plaintiff has the right to use the water on the Whitetail Allotment for stock watering purposes; 3) the AUMs that were part of the proposal for transfer to Mr. Kennedy historically and currently were used by CCC cattle; 4) the Whitetail Allotment's AMP gave plaintiff any additional grazing use on that allotment; and 5) the consumption of water by Mr. Kennedy's livestock on the Whitetail Allotment would constitute an uncompensated taking of plaintiff's water rights.

---

1. A "federal lands ranch" means that the owner owns "private 'base property,' to which are attached term grazing permits for specific grazing allotments, located on federal lands managed by" the Forest Service. Compl. filed June 9, 2004, ¶ 5. The allotments prevent harmful livestock grazing practices and preserve the allotments' value for "multiple use purposes[,]" which include livestock grazing. Id. ¶ 8. Plaintiff owns the base property portions of his ranch in fee simple, and those private lands support his livestock when they are not grazing on the attached federal allotments. The value of plaintiff's ranch is dependent upon the combination of the private and federal lands. Id.

Two years later, on August 11, 1995, the Forest Service released the Castle Mountain Draft Environmental Impact Statement (the "DEIS"), which included "Proposed Alternative (4)" and "Preferred Alternative (4A)." Both Alternatives included moving Mr. Kennedy's cattle onto plaintiff's Whitetail Allotment. By submitted public comments, representatives of the CCC objected to the movement of Mr. Kennedy's cattle onto the Whitetail Allotment.

The matter of Mr. Kennedy's cattle was finalized on February 28, 1997, when Gloria E. Flora, the Forest Supervisor for the Lewis and Clark National Forest, issued a ROD for the Castle Mountains Range Analysis. "Alternative 10" of the Final Environmental Impact Statement for the Castle Mountains Range Analysis (the "FEIS") was implemented via the ROD, and provided for the movement of 108 AUMs belonging to Mr. Kennedy from his permitted allotment to the Whitetail Allotment belonging to the CCC. Plaintiff appealed the ROD on April 14, 1997, and on May 23, 1997, the ROD was upheld.

On June 24, 1998, Mr. Kennedy was issued a term grazing permit for ninety-nine AUMs of grazing on the Whitetail Allotment, beginning on July 1, 2000. The grazing permit was validated on July 21, 2000, by an annual authorization of seventy-nine AUMs. Prior to this authorization, plaintiff was permitted 363 AUMs in the Whitetail Allotment. Subsequent to the ROD, the FEIS, and the authorization, the CCC was authorized 284 AUMs in the Whitetail Allotment. The reduction of seventy-nine AUMs in plaintiff's permit was equal to the authorization of AUMs given to Mr. Kennedy. On approximately July 1, 2000, Mr. Kennedy's livestock was placed on the Whitetail Allotment. The cattle began using plaintiff's water rights at that time. Plaintiff filed suit on June 9, 2004.

## DISCUSSION

Defendant moves to dismiss the complaint under RCFC 12(b)(1) for lack of subject matter jurisdiction. The burden of establishing the court's subject matter jurisdiction rests with the party seeking to invoke it, *see Myers Investigative & Sec. Servs., Inc. v. United States,* 275 F.3d 1366, 1369 (Fed.Cir.

2002), as federal courts are presumed to lack jurisdiction unless the record affirmatively indicates to the contrary, *see Renne v. Geary,* 501 U.S. 312, 316, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991). The statute of limitations in the Court of Federal Claims "is jurisdictional[ ] because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act[.]" *Caguas Cent. Fed. Sav. Bank v. United States,* 215 F.3d 1304, 1310 (Fed.Cir.2000); *see also Bray v. United States,* 785 F.2d 989, 992 (Fed.Cir.1986).

When a federal court hears such a jurisdictional challenge, "its task is necessarily a limited one" because "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court must accept as true the facts alleged in the complaint, *see Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988), and must construe such facts in the light most favorable to the pleader, *see Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995) (holding courts obligated "to draw all reasonable inferences in plaintiff's favor"). The court may consider all relevant evidence, including evidentiary matters outside the pleadings, when resolving a jurisdictional challenge. *See Alexander v. United States,* 52 Fed.Cl. 710, 712 (2002) (citing *Indium Corp. of Am. v. Semi–Alloys, Inc.,* 781 F.2d 879, 884 (Fed. Cir.1985)).

Defendant contends that plaintiff's claim is barred by the six-year statute of limitations imposed by statute on actions filed in the United States Court of Federal Claims because plaintiff filed his claim more than six years after the ROD was issued by the Forest Service on February 28, 1997.

To satisfy jurisdictional standards, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501; *see Alliance of Descendants of Tex. Land Grants v. United States,* 37 F.3d 1478, 1481 (Fed.Cir.1994); *Sherwin v. United States,* 42 Fed.Cl. 672, 675

n. 2 (1999). The statute of limitations under section 2501 begins to run when "all events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed.Cir.1988); *see also Alliance,* 37 F.3d at 1481 ("A claim accrues when all events have occurred that fix the alleged liability of the Government and entitle the plaintiff to institute an action."). When a taking is pleaded, a claim accrues when the taking occurs. *Steel Improvement & Forge Co. v. United States,* 174 Ct.Cl. 24, 29–30, 355 F.2d 627, 631 (1966). Finally, "the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." *Martinez v. United States,* 333 F.3d 1295, 1319 (Fed.Cir.2003).

Resolution of defendant's motion requires the court to determine when the Government's action over the AUMs on plaintiff's Whitetail Allotment had permanent legal effect, thereby effectuating any taking and creating a cause of action in favor of plaintiff. This determination hinges on the type of taking, if any, at issue and the import of the ROD issued on February 28, 1997.

Physical and regulatory takings can be distinguished for purposes of determining the date of accrual: Whereas a physical taking occurs "when the government encroaches upon or occupies private land for its own proposed use," *Palazzolo v. Rhode Island,* 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001), a regulatory taking occurs "when government action, although not encroaching upon or occupying private property, still affects and limits its use to such an extent that a taking occurs[,]" *Cienega Gardens v. United States,* 265 F.3d 1237, 1244 (Fed.Cir.2001) (citing *Palazzolo,* 533 U.S. at 617, 121 S.Ct. 2448). While the more common concept of physical taking evinces the "direct[ ] appropriat[ion of] private property" for the government's own use, *E. Enter. v. Apfel,* 524 U.S. 498, 522, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), a regulatory taking may assume the form of an " 'interference [that] arises from some public program adjusting the benefits and burdens of economic life to promote the common good,'" *id.* (quoting *Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)); *see also Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 324, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002).

The taking alleged by plaintiff is regulatory in nature. Plaintiff's land was never physically occupied by the Government; rather, the Forest Service implemented regulations that determined how plaintiff's land would be used. The Chief of the Forest Service exercised this power under 36 C.F.R. § 222.1 (1996), which confers upon him the authority to "develop, administer and protect the range resources and [to] permit and regulate the grazing use of all kinds and classes of livestock on all National Forest System lands." 36 C.F.R. § 222.1(a). This authority can be delegated, and in this instance resulted in the ROD issued by Ms. Flora on February 28, 1997.

Based on the facts as plaintiff has alleged them, it is not critical whether the ROD's date of issuance of February 28, 1997, or its affirmation on appeal on May 23, 1997, serves as the date of accrual for plaintiff's claim.[2] The court holds that the ROD itself is the final agency action and signifies the occurrence of the alleged regulatory taking. "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts,* 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992). It has been established that "a final [Environmental Impact Statement] or the record of decision

---

2. While defendant does not contend that the Appeal Deciding Officer's decision on May 23, 1997 upholding the ROD should constitute the date of accrual, it is noted that the date of final decision on appeal would not change plaintiff's failure to meet the statute of limitations, because plaintiff's complaint was filed after May 23, 2003. The

Federal Circuit has "held that a plaintiff's invocation of a permissive administrative remedy does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy." *Martinez,* 333 F.3d at 1304.

issued thereon constitute[s] final agency action." *Southwest Williamson County Cmty. Ass'n v. Slater,* 173 F.3d 1033, 1036 (6th Cir.1999). As the final agency action, the ROD " 'signaled the end of the decisionmaking process.' " *Franks v. Ross,* 313 F.3d 184, 195 (4th Cir.2002) (quoting *Jersey Heights Neighborhood Ass'n v. Glendening,* 174 F.3d 180, 186 (4th Cir.1999)).

Plaintiff takes the position that the date on which grazing commenced triggered the running of the statute of limitations. Plaintiff does not address defendant's arguments concerning the preeminence of the ROD in definitively altering plaintiff's property interest. Indeed, plaintiff's opposition brief does not address authority cited by defendant in support of its contention that the ROD constitutes a final agency action. Nonetheless, the acts alleged demonstrate that when the ROD was issued, at the earliest, and when the decision was no longer appealable, at the latest, plaintiff's use of his land was affected and limited, thereby creating the alleged taking and entitling him to bring a claim. It was at those points in time, February 28, 1997, or May 23, 1997, and not on the later date on which Mr. Kennedy's cattle began grazing on land formerly used by plaintiff's cattle, that plaintiff was, or should have been, aware of his potential takings claim. The court holds that, because plaintiff's alleged takings claim accrued on the date of the ROD, February 28, 1997, plaintiff's claim should have been filed no later than February 28, 2003, in order to fall within the Court of Federal Claims' six-year statute of limitations.

## CONCLUSION

Plaintiff's claim is time-barred for failure to be filed before the six-year statute of limitations expired. Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

Defendant's motion to dismiss is granted, and the Clerk of the Court shall dismiss the complaint without prejudice for lack of subject matter jurisdiction.