**John F. HUTCHENS, T.W. Arman, a/k/a Two Miners and 8000 Acres of Land, and Iron Mountain Mines, Inc., pro se, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 09–207L.**

United States Court of Federal Claims.

Oct. 6, 2009.

**556**

John F. Hutchens, Canyon, CA, T.W. Arman, Redding, CA, pro se plaintiffs, and Iron Mountain Mines, Inc., Redding, CA, plaintiff appearing without counsel.

Joshua A. Doan, Washington, DC, with whom was Acting Assistant Attorney General John C. Cruden, for defendant.

### *MEMORANDUM OPINION AND ORDER*

MILLER, Judge.

This case is before the court on Defendant's Motion To Strike or, in the Alternative, To Dismiss Plaintiffs' Second Amended Complaint. Plaintiffs Hutchens and Arman filed their original complaint on April 6, 2009, and their first amended complaint on May 7, 2009. A second amended complaint was filed on behalf of Messrs. Hutchens and Arman and newly added plaintiff Iron Mountain Mines, Inc., on June 11, 2009. In their second amended complaint, plaintiffs allege that remedial actions of the United States Environmental Protection Agency (the "EPA") constitute a taking of property entitling them to just compensation under the Fifth Amendment to the U.S. Constitution. Defendant moved to strike the second amended complaint because it has not been signed by properly admitted counsel for Iron Mountain Mines, Inc., as required by RCFC 83.1(a)(3). Defendant moved to dismiss the second amended complaint as to all plaintiffs because it is barred by the applicable statute of limitations, 28 U.S.C. § 2501 (2006), or, pursuant to RCFC 12(b)(6), because it fails to state a claim upon which relief can be granted. Argument is deemed unnecessary.

### BACKGROUND

Plaintiffs John F. Hutchens and T.W. Arman are *pro se* litigants responsible for filing the original and first amended complaints—together these two pleadings constitute a 267–page manifesto of factual and legal allegations purporting to establish a compensable Fifth Amendment takings claim. Plaintiff Iron Mountain Mines, Inc. ("IMMI"), is named in the second amended complaint, which condenses plaintiffs' allegations to eight pages, although plaintiffs have re-alleged substantially the same Fifth Amendment claim pleaded in the original and first amended complaints: that the EPA's remedial actions at the Iron Mountain Mine Superfund site near Redding, California (the "IMMI Superfund Site"), resulted in a com-

pensable taking of IMMI's private property. Defendant's motion adequately distills the relevant facts into a summary of less than three pages, excluding legal argument. The court's review of the pleadings confirms the accuracy of defendant's rendition. Consistent with the case law governing consideration of *pro se* complainants, set forth in the body of this opinion, the court has indulged plaintiffs with the presumption to favor all facts as well pleaded and to construe the second amended complaint as supporting jurisdiction, except insofar as disputed facts, regarding which the court has considered extra-complaint documents of record. In evaluating the existence of a claim for relief, the court has considered the allegations of the unadorned second amended complaint.

Plaintiffs' claim is traceable to a lawsuit originally filed in the United States District Court for the Eastern District of California on June 12, 1991 (the "district court lawsuit"), which arose after the EPA's redress of mining waste at the IMMI Superfund Site. See Def.'s Br. filed July 6, 2009, at 2 (*citing* Complaint, *United States v. Iron Mountain Mines, Inc.*, 881 F.Supp. 1432 (E.D.Cal.1995) (No. 1)); First Am. Compl. ¶ 1 ("This matter originated as a petition to reopen a 'closed' district court proceeding."). In that complaint the United States alleged that various defendants, including Mr. Arman and IMMI, were liable under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–75 (2006) ("CERCLA"), for the EPA's cleanup costs. *See Iron Mountain Mines, Inc.*, 881 F.Supp. at 1434, 1437. On October 1, 2002, the federal district court held that Mr. Arman and IMMI were liable for the cleanup costs—Mr. Arman as the site operator and IMMI as the owner of the site. Def.'s Br. filed July 6, 2009, at 2 (*cit-*

*ing United States v. Iron Mountain Mines, Inc.*, 881 F.Supp. 1432 (E.D.Cal.1995) (order granting partial summary judgment)). The district court rejected IMMI's innocent-landowner defense "because IMMI purchased the property with knowledge of—indeed, at least in part, because of—the presence of hazardous materials." *Id.* Additionally, the district court rejected Mr. Arman's innocent-landowner defense "because he is not the 'owner' of the facility in need of cleanup." *Id.* at 2–3.

Mr. Hutchens moved to intervene *pro se* in the federal district court lawsuit by filing a "Notice of Joinder" on March 10, 2008. *Id.* at 3; *see also* Notice of Joinder of Potentially Responsible Party and Supporting Memorandum, *United States v. Iron Mountain Mines, Inc.*, 881 F.Supp. 1432 (E.D.Cal.1995) (No. 1261). Mr. Hutchens asserted that the EPA's remedial activities at the IMMI Superfund Site had created a "High Density Sludge" and that "Mr. T.W. Arman and Iron Mountain Mines, Inc. have entered into a joint venture with Mr. John Hutchens and Serenescapes" to recover minerals from the High Density Sludge. Def.'s Br. filed July 6, 2009, at 3 (internal quotation omitted). Mr. Hutchens continued filing *pro se* papers in the district court lawsuit until the district court on January 2, 2009, "struck his motion (and other filings) and barred Mr. Hutchens from filing additional documents except through properly admitted counsel."[1] Def.'s Br. filed July 6, 2009, at 3 (*citing United States v. Iron Mountain Mines, Inc.*, 881 F.Supp. 1432 (E.D.Cal.1995) (order denying motion to join or intervene)).

## FACTS

Messrs. Hutchens and Arman filed their original complaint in this court on April 6,

1. Since the district court's January 2, 2009 order, Mr. Hutchens twice has sought a writ of mandamus from the United States Court of Appeals for the Ninth Circuit. Mr. Hutchens's first attempt, filed as a "Motion for Adjudication and Judgment on the Merits [and] Motion for Appointment of Project Manager According to the Statement of Work," *see In re John F. Hutchens*, No. 09–70047 (9th Cir. filed Feb. 2, 2009), was rejected by the Ninth Circuit on February 18, 2009, *see In re John F. Hutchens*, No. 09–70047 (9th Cir. filed Feb. 18, 2009). The Ninth Circuit

also denied Mr. Hutchens's request for reconsideration. *See In re John F. Hutchens*, No. 09–70047 (9th Cir. filed Mar. 23, 2009). Mr. Hutchens's second attempt, filed April 20, 2009, was pending when defendant filed its to motion to strike or dismiss. *See* Def.'s Br. filed July 6, 2009, at 3 (*citing In re John F. Hutchens*, No. 09–71150 (9th Cir. filed Apr. 20, 2009)). The Ninth Circuit subsequently denied Mr. Hutchens's second attempt and has barred any other submissions. *See In re John F. Hutchens*, No. 09–71150 (9th Cir. filed July 28, 2009).

2009. Defendant describes the original complaint—consisting of forty-two pages and 197 numbered paragraphs purporting to establish, among various indecipherable or otherwise elusive claims, a taking under the Fifth Amendment—as "so vague, ambiguous, and verbose that the United States could not have reasonably responded to [it]." Def.'s Br. filed July 6, 2009, at 3 n. 1. Prior to any response by defendant, Messrs. Hutchens and Arman filed their first amended complaint—225 pages and 923 numbered paragraphs—on May 7, 2009.[2] Like the original complaint, the first amended complaint alleges a variety of claims that are predicated on the EPA's remedial action at the IMMI Superfund Site and which, for the purposes of jurisdiction over and review by the United States Court of Federal Claims, reduce to a claim for a compensable taking under the Fifth Amendment.[3]

This court held an on-the-record status conference on May 26, 2009, to address further proceedings in light of Messrs. Hutchens's and Arman's May 7, 2009 filings. Pursuant to RCFC 12(e), defendant orally moved for a more definite statement of Messrs. Hutchens and Arman's claim. The court considered defendant's concerns about its need for a more focused and coherent expression of the facts relating to a takings claim and concluded that defendant had justified its request. The court ruled that plaintiffs' voluminous pleading did not comply with RCFC 8(a) and entered an order on May 27, 2009, granting defendant's oral motion without briefing pursuant to RCFC 7.2(a)(1).[4] The court ordered, as follows:

3. By June 15, 2009, plaintiffs shall file a Second Amended Complaint that complies with RCFC 8(a). The court has discussed with plaintiffs the importance of setting forth the exact nature of their respective ownership rights in the property that is the subject of the alleged taking and stating precisely the actions of the Government that constitute a taking and for which plaintiffs claim compensation.

Order filed on May 27, 2009, at 2. Defendant was ordered to respond to the Second Amended Complaint by July 6, 2009. The court instructed that, aside from the second amended complaint or a notice of voluntary dismissal pursuant to RCFC 41(a), the Clerk of the Court was to accept no pleadings or other submissions from plaintiffs until defen-

---

2. Messrs. Hutchens and Arman also filed in the Court of Federal Claims an Emergency Order for Preliminary Injunctive Relief on May 7, 2009.

3. Within the first amended complaint, Mr. Arman (as the self-professed "Warden of the Stannaries") and Mr. Hutchens (as the self-professed "Tenant–in–Chief" and "Warden of the Forest") claim

> by ancient writ of 'Breve soke', [sic] and convene by right of the 'Warden of the Stannaries' and the 'Warden of the Forest' a 'Miner's Court' for a determination of franchise jurisdiction according to the Constitutions of the United States and of the State of California, and according to the laws of California, the laws of the United States of America, and the common law of England, and [Mr. Arman and Mr. Hutchens] motion for writ of *certiorari* to resolve these questions and the allegations of fraudulent executive authority and jurisdiction by the EPA and [the United States Department of Justice]. . . . [Mr. Hutchens and Mr. Arman] Claim Breach of Grant and Infringement of Sovereign Patent Title, Constructive Trust, Usurpation of a Franchise, Ulterior Government Motive, Malice, Fraud upon the Court, *Negligent and Unnecessary Imminent and Substantial Endangerment*, False Claims, Deceit.

First Am. Compl. ¶ 5.

According to the first amended complaint, IMMI (which was not a named plaintiff) and Mr. Arman "contend that the physical taking of the Brick Flat Pit [at the IMMI Superfund Site] produced a compensable impact on the entire Property's value." *Id.* ¶ 8. On behalf of IMMI and Mr. Arman, the first amended complaint requests—in addition to the damages caused by the EPA's physical intrusion and taking at the IMMI Superfund Site—"compensation for stigmatic injuries, [and] for malicious prosecution with malice, fraud, oppression, deceit, despotism, and tyranny." *Id.* ¶ 28. The first amended complaint "seek[s] an award to Iron Mountain Mines, Inc. and T.W. Arman of $7,074,500.00 (billion) in just compensation, with detinue sur bailment, remission, & reversion, plus damages, interest, attorney's [sic] fees, and costs." *Id.* ¶ 35.

4. The court also disposed of Messrs. Hutchens and Arman's motion for emergency injunctive relief, concluding that, because the desired relief neither implemented a final judgment nor was related to a bid protest, the court lacked jurisdiction to grant the relief. *See* Order filed May 27, 2009, at 1.

dant filed its answer or other response to the second amended complaint.[5] *Id.*

Adding IMMI as a plaintiff in the instant action, plaintiffs filed the second amended complaint on June 11, 2009.[6] Plaintiffs allege that the EPA's remedial actions "constitute a taking of the Iron Mountain Mines, Inc. property [sic] warranting just compensation to Iron Mountain Mines, Inc. et al [sic] under the Fifth Amendment of the constitution [sic] of the United States for a partial takings [sic] of private property and incidental damages of $7,074,500,000.00 (billion)."[7] Second Am. Compl. at 8. Although plaintiffs have deleted all of their non-Fifth Amendment causes of action, the second amended complaint—with a few minor variations—is a verbatim duplication of the first amended complaint's claim for a compensable taking.[8] *Compare* Second Am. Compl. ¶¶ 1–28, *with* First Am. Compl. ¶¶ 6–35.

Defendant filed its motion to strike or dismiss on July 6, 2009, arguing, first, that the court should strike the second amended complaint because it was not signed on behalf of IMMI by properly admitted counsel. *See* RCFC 83.1(a)(3). However, if the court were to determine that plaintiffs properly filed the second amended complaint, defendant requested that the court dismiss the second amended complaint for lack of subject matter jurisdiction—based on expiration of the six-year statute of limitations, 28 U.S.C. § 2501—or pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

On July 13, 2009, the court ordered plaintiffs, "[b]y July 17, 2009, . . . [to] file their responsive brief *addressing only the issues raised in defendant's [motion to strike or dismiss]. The court will not consider discussion of any other matters.*" Order filed July 13, 2009, at 1 (emphasis added). Defendant was given until July 31, 2009, to respond to plaintiffs' filing. *Id.* After filing by leave plaintiffs' July 13, 2009 "Petition for Leave To File Opposition to Motion To Strike[,] Opposition to Motion To Dismiss[,] Motion To Instruct the Clerk To Enter and File Pleadings & Papers[, and] Petition for Order Declaring Defendants' Pleading as an Answer [sic]," the court entered an order on July 15, 2009, denying all relief therein requested by plaintiffs due to their failure to comply with the court's earlier order. The court afforded plaintiffs another opportunity to respond only to the issues raised in defendant's pending motion, ordering that plaintiffs submit a compliant filing by July 31, 2009, and that defendant respond by August 14, 2009.[9] Order filed July 15, 2009, at 1.

---

5. On May 27, 2009, Messrs. Hutchens and Arman had filed "Plaintiff's [sic] Objection to Delay and for Defendant's Request for Status Conference and Definite Statement."

6. The second amended complaint identifies Mr. Arman as "the sole stockholder of Iron Mountain Mines, Inc.," and as IMMI's "President, Chairman, and Chief Executive Officer"; it identifies Mr. Hutchens as "Tenant in-Chief, Warden of the Forest, and Warden of the Stannaries, Iron Mountain Mines, Inc." Second Am. Compl. at 8.

7. The second amended complaint "date[s] the taking as having actually commenced on January 1st, 1989. . . ." Second Am. Compl. ¶ 22.

8. Generally, whereas the first amended complaint conjoins both IMMI and Mr. Arman in its factual and legal allegations, the second amended complaint sets forth the factual and legal allegations solely from IMMI's singular perspective. *Compare* First Am. Compl. ¶ 8 ("Iron Mountain Mines, Inc. and T.W. Arman contend . . . ."), *with* Second Am. Compl. ¶ 3 ("Iron Mountain Mines contend [sic]. . . ."). The second amended complaint's other modifications have no substantive effect, with its entire deletion

of the following text from the first amended complaint removing some hyperbole:

> At best, the EPA actions appear to be a thinly disguised effort by anti-development vigilantes to circumvent petitioner's lawful right to the complete development of the minerals and the land guaranteed by patent title. At worst it is a blatant usurpation and confiscation of property by government conspirators with ulterior government motives under color of law.
>
> Furthermore, the [transfer of] the stigma and personal injury of blame for the possible extinction of salmon and trout [at the IMMI Superfund Site] to the innocent landowner without informed counsel or participation in the settlement, and the transfer of unquantified and unlimited CERCLA liabilities from the responsible parties to the innocent landowners is a manifest injustice of errors of impunity and miscarriage of justice.

*Compare* First Am. Compl. ¶¶ 33–34, *with* Second Am. Compl. ¶¶ 1–28 (omitting the quoted language).

9. On July 16, 2009, the court issued an order directing the Clerk of the Court to refer plaintiffs to a list of attorneys in the State of California

Although plaintiffs did not file any papers with the court prior to the July 31, 2009 deadline, defendant filed its reply on August 14, 2009, which reasserted its motion to strike or dismiss.

Despite missing their court-ordered deadline for responding to defendant's motion to strike or dismiss, plaintiffs submitted two new filings with the court. On August 20, 2009, plaintiffs filed a "Petition for Adverse Claims Writs of Possession & Ejectment; Damages Waiver of Torts: The United States To File an Answer to the Second Amended Complaint: Request for Admissions, Declared Detriment [sic]." On August 31, 2009, plaintiffs filed a "Motion for Name Clearing Hearing on Premises or Congress Assembled[,] Absolute Order & High Appellation: Letters of Marque & Reprisal; 1, 3, 4[,] Creation by Letters Patents Deputy *Coram Nobis Tenenda Divide et Regnis* [sic]." Neither of these filings is confined to the issues plaintiffs were required to address by the July 13, 2009 order.

In response to plaintiffs' August 20, 2009 filing, defendant requested that the court "direct plaintiffs to make no further filings until [it] has resolved Defendant's pending [motion to strike or dismiss]." Def.'s Br. filed Sept. 8, 2009, at 1. Defendant also requested that the court stay defendant's required response to plaintiffs' August 31, 2009 filing. By order entered on September 10, 2009, the court noted that plaintiffs' most recent filings disrupted the orderly resolution of the motion to strike or dismiss; instructed the Clerk of the Court not to accept any filings from plaintiffs prior to the court's resolution of defendant's pending motion; and stayed a response from defendant to plaintiffs' August 31, 2009 motion pending further order of the court.

## DISCUSSION

Defendant moves the court to strike the second amended complaint pursuant to RCFC 11(a) and 83.1(a) or, in the alternative, to dismiss the second amended complaint based on the bar of the statute of limitations, 28 U.S.C. § 2501, or for failure to state a claim upon which relief can be granted,

RCFC 12(b)(6). Because defendant's motion implicates the court's subject matter jurisdiction, the court first considers defendant's motion to dismiss under the jurisdictional statute of limitations.

### 1. *Standard of review*

 Documents filed *pro se* are "to be liberally construed . . . and a *pro se* complaint, however inartfully [sic] pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); see *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); see also *Ruderer v. United States*, 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969) ("[W]e have strained our proper role in adversary proceedings to the limit, searching this lengthy record to see if plaintiff has a cause of action somewhere displayed."). Nevertheless, while "[t]he fact that [a plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, . . . it does not excuse its failures, if such there be." *Henke v. United States*, 60 F.3d 795, 799 (Fed.Cir.1995). Although *pro se* plaintiffs are given some leniency in presenting their case, their *pro se* status does not immunize them from pleading facts upon which a valid claim can rest. See, e.g., *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed.Cir.2002) (affirming dismissal of *pro se* plaintiff's complaint which sought, *inter alia*, a tax refund); *Constant v. United States*, 929 F.2d 654, 658 (Fed.Cir.1991) (sanctioning *pro se* plaintiff for filing frivolous appeal). Additionally, the filings of *pro se* plaintiffs receive less leniency vis-à-vis jurisdictional requirements. See *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987) ("We agree that leniency with respect to mere formalities should be extended to a *pro se* party, . . . . [but] a court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only."); *see also Ledford*, 297 F.3d at 1382 (affirming dismissal of *pro se* plaintiff's complaint seeking unpaid tax refund); *Carter v. United States*, 62 Fed.Cl. 66, 69

who are available to assist petitioners proceeding *pro se.*

(Fed.Cl.2004) ("When ruling on motions to dismiss for lack of subject matter jurisdiction, however, a court's leniency is tempered by the exacting requirements of jurisdiction." (citation omitted)); *Bernard v. United States,* 59 Fed.Cl. 497, 499 (Fed.Cl.2004) (holding that latitude afforded to *pro se* plaintiffs "does not relieve a *pro se* plaintiff from meeting jurisdictional requirements"), *aff'd,* 98 Fed.Appx. 860 (Fed.Cir.2004). Of course, plaintiff IMMI is not a *pro se* plaintiff and will be held to satisfy jurisdictional prerequisites.

### 2. *Subject matter jurisdiction under 28 U.S.C. § 2501*

 Under 28 U.S.C. § 2501 "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Since consideration of whether a claim falls within the six-year window of § 2501 implicates the court's subject matter jurisdiction, § 2501 is applied rigidly and cannot be waived. *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 128 S.Ct. 750, 752–54, 169 L.Ed.2d 591 (2008); *see Young v. United States,* 529 F.3d 1380, 1384 (Fed.Cir.2008). The timeliness of a claim under 28 U.S.C. § 2501 may require *sua sponte* consideration even when it is not challenged. *John R. Sand & Gravel Co.,* 128 S.Ct. at 752.

 The accrual of plaintiffs' claim is fixed "when all events have occurred which fix the liability of the Government and entitle [plaintiffs] to institute an action." *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d 1449, 1455 (Fed.Cir.1997). A takings claim under the Fifth Amendment accrues when the taking occurs. *Goodrich v. United States,* 63 Fed.Cl. 477, 480 (Fed.Cl. 2005) (*citing Steel Improvement & Forge Co. v. United States,* 174 Ct.Cl. 24, 355 F.2d 627, 631 (1966)). Physical takings occur " 'when the government encroaches upon or occupies private land for its own proposed use.' " *Id.*

(*quoting Palazzolo v. Rhode Island,* 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001)).

 Faced with defendant's challenge to the court's subject matter jurisdiction, the court's task "is necessarily a limited one." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The question before the court is "is not whether [plaintiffs] will ultimately prevail but whether [plaintiffs are] entitled to offer evidence to support the claims." *Id.* The court must accept as true the facts alleged in the second amended complaint and must construe such facts in the light most favorable to plaintiffs. *See Henke,* 60 F.3d at 797; *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). Nevertheless, since the jurisdictional facts alleged in the second amended complaint are disputed, "the ... court may consider relevant evidence in order to resolve the factual dispute." *Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir. 1999); *Reynolds,* 846 F.2d at 747. Ultimately, it is "incumbent upon [plaintiffs] to come forward with evidence establishing the court's jurisdiction. [Plaintiffs] bear the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds,* 846 F.2d at 748; *see also McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

 Plaintiffs have failed to establish the timeliness of—and, consequently, the court's jurisdiction to consider—their purported takings claim. Because the original complaint was filed on April 6, 2009, the underlying taking could have occurred no earlier than April 6, 2003, in order to render a claim timely under 28 U.S.C. § 2501. Nevertheless, plaintiffs' second amended complaint asserts that they "date the taking as having actually commenced on January 1, 1989." [10] Second Am. Compl. ¶ 22. Accordingly, plaintiffs' claim accrued more than six years be-

---

**10.** Plaintiffs use January 1, 1989, to date their takings claim "because it marks the Courts [sic] approval of the physical intrusion from which all damages in this matter arise." Second Am. Compl. ¶ 22. Further, the start-date for plain-

tiffs' damage calculations—by which plaintiffs sum the projected annual royalties that they allegedly would have received by extracting mineral products from the IMMI Superfund Site—is January 1, 1989. *Id.* ¶¶ 17–18.

fore plaintiffs filed the original complaint and is barred by the statute of limitations.

### 3. *Failure to state a claim pursuant to RCFC 12(b)(6)*

 Assuming that plaintiffs' second amended complaint were to be considered on its merits, defendant also moves pursuant to RCFC 12(b)(6) to dismiss the second amended complaint for failure to state a claim upon which relief can be granted. Defendant correctly distills " '[t]he purpose of [RCFC 12(b)(6) ] ... [as allowing] the court to eliminate actions that are fatally flawed in their legal premises and destined to fail.' " Def.'s Br. filed July 6, 2009, at 8 (*quoting Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed.Cir. 1993)); *see also Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court's task in considering a motion to dismiss for failure to state a claim is not to determine whether a plaintiff will ultimately prevail, but " 'whether the claimant is entitled to offer evidence to support the claims.' " *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 938 (Fed.Cir.2007) (*quoting Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683). The court must assess whether the complaint adequately states a claim and whether plaintiffs can allege "facts plausibly suggesting (not merely consistent with)" a showing of entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed.Cir.2009); *see also Ashcroft v. Iqbal*, ─── U.S. ───, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (restating *Twombly* standard as stating "a claim to relief that is plausible on its face"); *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356–57 (Fed.Cir.2007). Although a plaintiff's factual allegations need not be "detailed," they "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal citation omitted). The court thus " 'accept[s] as true all factual allegations in the complaint, and ... indulge[s] all reasonable inferences in favor of the non-movant' " to evaluate whether plaintiffs have stated a claim upon which relief can be granted. *Chapman Law Firm*, 490 F.3d at 938 (*quoting Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed.Cir.2001) (omission in original)).

 The United States Court of Appeals for the Federal Circuit has stated that "in a takings case [the court] assume[s] that the underlying action was lawful." *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1370 (Fed.Cir.2005) (internal quotation omitted) ("To the extent that the plaintiff claims it is entitled to prevail *because* the agency acted in violation of a statute or regulation, [our decisions do] not give the plaintiff a right to litigate that issue in a takings action rather than in the congressionally mandated administrative review proceeding." (internal quotation omitted)).[11] Accordingly, defendant maintains that a lawful government action must underlie plaintiffs' Fifth Amendment claim. Plaintiffs contest the legality of the EPA's remedial actions at the IMMI Superfund Site. The second amended complaint "dispute[s] the United States [sic] lawful authority to conduct these CERCLA remedial actions (removal) and demand[s] the return of the property and restoration of rights, privileges, and immunities of patent title to the possession and enjoyment of T.W. Arman and John F. Hutchens." Second Am. Compl. ¶ 26. Plaintiffs contend that the EPA "disregarded its duty and responsibilities to implement a remedial action that was fully protective of the health and environment .... [and][had] no actual justification for its actions." *Id.* ¶¶ 25, 27. These allegations of unlawful government action do not support a Fifth Amendment claim filed in the Court of Federal Claims.

### 4. *Failure to comply with an order of the court pursuant to RCFC 41(b)*

The court considers *sua sponte* plaintiffs' failure to comply with an order of the court.

---

11. Defendant notes that "during the May 26 telephonic hearing, this Court explained at length the difference between a claim for just compensation under the Fifth Amendment, which may be brought in this Court, and a challenge to the legality of governmental action, which must be brought in the appropriate district court." Def.'s Br. filed July 6, 2009, at 8.

Rule 41(b) provides: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, the court may dismiss on its own motion." RCFC 41(b); *see also Claude E. Atkins Enters. v. United States*, 899 F.2d 1180,1183–84 (Fed.Cir.1990) (affirming Court of Federal Claims' invocation of RCFC 41(b)).

■■■ On May 26, 2009, after reviewing the turgid first amended complaint, the court held a status conference with the parties and advised Messrs. Hutchens and Arman that the first amended complaint did not comply with RCFC 8(a). Rule 8(a) requires "(1) a short and plain statement of the grounds for the court's jurisdiction ...; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." RCFC 8(a). In *Ashcroft* the United States Supreme Court stated that "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." 129 S.Ct. at 1949 (internal quotation omitted). Further, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). On May 27, 2009, the court ordered, as follows:

> 3. By June 15, 2009, plaintiffs shall file a Second Amended Complaint that complies with RCFC 8(a). The court has discussed with plaintiffs the importance of setting forth the exact nature of their respective ownership rights in the property that is the subject of the alleged taking and stating precisely the actions of the Government that constitute a taking and for which plaintiffs claim compensation.

Order filed May 27, 2009, at 2.

■■■ Rather than comply with this order, plaintiffs filed a doppelganger of their first amended complaint. While plaintiffs eliminated their non-Fifth Amendment causes of action, they made negligible revi-

sions to their takings claim, leaving defendant and the court with an otherwise nonsensical diatribe. As suggested elsewhere:

> Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges. As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed....
>
> ....
>
> ... Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.

*McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir.1996).[12] The second amended complaint does not permit the court to infer an allegation that the Government is liable for any of the alleged misconduct, and its filing by plaintiffs merits the court's invocation of RCFC 41(b).

Plaintiffs also failed to comply with the court's order entered on July 15, 2009. The July 15, 2009 order required plaintiffs to file by July 31, 2009, a response to the motion to strike or dismiss—addressing only the issues raised in the motion. After failing to respond as ordered by July 31, 2009, plaintiffs filed two non-responsive pleadings on August 20, 2009, and August 31, 2009, respectively.[13]

### 5. *Defendant's motion to strike*

■■■ Defendant requests that the court strike the second amended complaint because it fails to comply with RCFC 11(a) and 83.1(a). Rule 11(a) provides that "[e]very pleading, written motion, and other paper must be signed by or for the attorney of record in the attorney's name—or by a party personally if that party is unrepresented." RCFC 11(a). If a filing is not signed according to RCFC 11(a), "[t]he court must strike

---

12. Although not binding, "the decisions of other regional circuits are persuasive authority and instructive." *See Bank of Guam v. United States*, 578 F.3d 1318, 1326 n. 4 (Fed.Cir.2009).

13. The Clerk's Office received two new submissions from plaintiffs on September 11, 2009. These submissions were returned unfiled pursuant to the orders entered on July 13, 2009; July 15, 2009; and September 10, 2009.

[the] unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." *Id.* Rule 11(a) does not permit corporations to proceed and file papers *pro se.* Rule 83.1(a)(3) clarifies that "[a]n individual who is not an attorney may represent oneself or a member of one's immediate family, *but may not represent a corporation,* an entity, or any other person in any proceeding before this court." RCFC 83.1(a)(3) (emphasis added). Corporations appearing before the Court of Federal Claims must be represented by attorneys admitted to practice before the court under RCFC 83.1, and this rule "does not contemplate exceptions." *Talasila, Inc. v. United States,* 240 F.3d 1064, 1067 (Fed.Cir.2001) (considering RCFC 83.1(a)(3)'s predecessor, RCFC 81(d)(8)).

 Although the second amended complaint adds IMMI as a plaintiff to the instant action, it is not signed by a properly admitted attorney pursuant to Rule 83.1(a)(3). *Pro se* plaintiffs Messrs. Hutchens and Arman are the only signatories. Defendant represents that it notified plaintiffs of this deficiency by a letter that is not in the record. Defendant apparently warned plaintiffs that it would move to strike the second amended complaint "unless it received notice that IMMI would be either (1) withdrawing as a plaintiff in this action, or (2) represented by properly admitted counsel." Def.'s Br. filed July 6, 2009, at 6 n. 2. Plaintiffs apparently responded to defendant's letter by attempting to file—thereby disregarding the court's May 27, 2009 order—a "Petition for Leave To Proceed *Pro Se & In Forma Pauperis[,]* Second Amended Complaint: Demand for Answer![,] Takings Claim! [sic]." *Id.* IMMI remains unrepresented by a properly admitted attorney despite plaintiffs' receipt—pursuant to the court's July 16, 2009 order—of a list of attorneys willing to assist *pro se* petitioners. *See supra* note 9. Consequently, notwithstanding defendant's warning and the court's assistance, plaintiffs' second amended complaint continues to contravene RCFC 11(a) and 83.1(a).

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to strike is granted regarding the unrepresented corporate plaintiff. Defendant's motion to dismiss the second amended complaint for lack of subject matter jurisdiction is granted. Were any court to indulge the second amended complaint by considering its substantive allegations, the complaint would merit dismissal with prejudice. Dismissal with prejudice would be granted because plaintiffs failed to state a claim upon which relief can be granted under RCFC 12(b)(6) and willfully failed to comply with the court's orders, thereby triggering the court's *sua sponte* order pursuant to RCFC 41(b).

Although plaintiffs cannot be barred on the merits, their refusal to comply with the rules requiring intelligible pleadings and with court orders warrants admonishment that they could subject themselves to sanctions under RCFC 11(a) for filing similar screeds couched as complaints at law. *See Willy v. Coastal Corp.,* 503 U.S. 131, 139, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) ("[Despite] a subsequent determination that the court was without subject-matter jurisdiction[,] . . . there is no constitutional infirmity under Article III in requiring those practicing before the courts to conduct themselves in compliance with the applicable procedures in the interim, and to allow courts to impose Rule 11 sanctions in the event of their failure to do so."). Accordingly,

**IT IS ORDERED,** as follows:

1. Plaintiffs' motion filed on August 31, 2009, is denied.

2. Defendant's motion to strike is granted insofar as plaintiff Iron Mountain Mines, Inc., is stricken from the second amended complaint.

3. The Clerk of the Court shall dismiss the second amended complaint, including plaintiffs' August 20, 2009 "petition," without prejudice for lack of subject matter jurisdiction.